UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH HENDRIX, 455498

     Petitioner,                     CASE NO. 2:11-CV-14659

v.                                  HON. AVERN COHN

CARMEN PALMER,             MAG. MONA K. MAJZOUB

     Respondent.

_____

## Answer in Opposition to Petition for Writ of Habeas Corpus

## Introduction

Petitioner, Joseph Michael Hendrix, was a drug addict and an opportunistic car thief. His modus operandi was that he would wait near a strip mall or other collection of businesses and watch for someone to leave their car unattended with the keys in the ignition, or at least, in the car, while entering a nearby business. Then Hendrix would run into the driver's seat and drive off, often within minutes of the person leaving the vehicle. He stole at least three cars this way before this case. After stealing the cars, he would drive them to the

same crack neighborhood in Detroit.  Apparently he, as a crack addict, did not own a car and could not get anyone to lend him one.

On September 5, 2006, Gina Doen left the keys in her car, the engine running, while she ran into a cleaners.  Hendrix, watching, thought he had an easy mark.  He jumped into the driver's seat and started to drive away.  Unfortunately, due to the tinted windows, he had a surprise.  Gina's elderly mother Evangeline was still in the van, waiting for her.  Hendrix's reaction was swift and deadly.  He pushed her out of the van and drove off.  Evangeline hit her head on the pavement, causing a bleed in her brain.

Within a few minutes, Gina Doen noticed her mother on the pavement.  She called the police and an ambulance.  But it was too late.  Her mother was critically injured and her van was gone.  Once at the hospital, Evangeline told the nurse that a young white man had gotten into the van and pushed her out.  The van itself was recovered six hours later.  Detroit police spotted the van, speeding.  Before they could pull it over, it had already stopped, at a gas station.  The station was very near Hendrix's favorite crack neighborhood in Detroit.  When the police pulled up to it, Hendrix was in the driver's seat.  The van having been

2

reported stolen, Hendrix was arrested.  After being advised of his rights and verbally saying he understood them, Hendrix volunteered to police that he did not know how he got the van.  Aside from the owners, only Hendrix's prints were found on or in the van.  Also found inside were some items belonging to Hendrix's girlfriend.

Ten days after Hendrix pushed her onto the pavement, Evangeline Doen died from her injuries.

At trial, to establish Hendrix's common plan or scheme and also his modus operandi and identity, the prosecutor presented evidence of his three prior car thefts.  Hendrix's defense was that he stole the car, but that he stole it from some unidentified carjacker who "must have abandoned" the van after pushing Evangeline out.  And that somehow, Hendrix did not notice this and was able to steal the van within the few minutes between the "original" carjacking and Gina noticing it.  The jury didn't buy it.  Hendrix was found guilty of carjacking, felony murder, and unlawful driving away of an automobile.

Hendrix now raises eight claims in his habeas petition.  However, his attorney does nothing other than list the claims; he makes no arguments.  By failing to make any adequate argument for any of

3

Hendrix's claims, he has abandoned them all.  Hendrix's petition should therefore be dismissed for failure to adequately present any issues in his habeas petition.

As a result of his Macomb County jury conviction of first-degree felony murder (Mich. Comp. Laws § 750.316(1)(b)), carjacking (§ 750.529a), and unlawfully driving away an automobile (UDAA) (§750.413), Carmen Palmer now holds Hendrix in custody in the Michigan Department of Corrections.  Hendrix is currently serving concurrent sentences of life without parole for the murder conviction, life for the carjacking conviction, and 3 to 5 years for the UDAA conviction.

Hendrix commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court.  The State understands the petition to be raising the following claims:

    I.    The trial court erred by admitting statements allegedly made by Hendrix when he had, on separate occasions, invoked his right to counsel, to remain silent, and had made an invalid *Miranda* waiver.

    II.    The prosecution committed misconduct by using Hendrix's alleged statements against him and by misstating the substance of those statements, thus depriving him of his due process right to a fair trial.

4

III.  Hendrix was denied the effective assistance of his attorney where his counsel failed to object to the introduction of Hendrix's statements or the prosecutorial misconduct.

IV.  The trial court erred in permitting the introduction of other acts evidence to prove Hendrix's identity where there was insufficient similarity between the other acts and the crime in his case, thus violating Hendrix's due process right to a fair trial.

V.  There was insufficient evidence to support Hendrix's convictions.

VI.  Hendrix was denied his right to the effective assistance of counsel by his counsel's failure to investigate and find evidence of similar acts by unknown perpetrators, failure to present that evidence, failure to object to unfairly prejudicial evidence, and failure to object to prosecutorial misconduct.

VII.  Hendrix was denied the effective assistance of appellate counsel by his appellate counsel's failure to raise these new claims of ineffective assistance of trial counsel and prosecutorial misconduct.

VIII.  Hendrix was denied due process by the prosecutor's misconduct, which included improper questioning, argument, and shifting of the burden of proof.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading.

The State now answers the petition and requests that it be denied. With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

5

## A.    Statute of Limitations

The State asserts that the last three claims raised by Hendrix are barred by the applicable statute of limitations.

When he filed his original petition in this case on October 21, 2011, he had only three days remaining before the statute of limitations expired.  While that is also the day he filed his motion to stay and abey his petition, he did not include in that motion his three new claims that he was to exhaust.  His first mention of those claims with the District Court was when he filed his motion to amend the petition on May 12, 2014, long after the remaining three days had passed.  Those three days were up as of Monday, October 24, 2011. Hendrix's motion for relief from judgment in state court was not filed until March 21, 2012, at which point, it was too late to toll the statute of limitations for AEDPA—it had already long expired.

Therefore, Hendrix's claims VI, VII, and VIII (labeled as VII, VIII, and IX below) are time barred.

**B.    Exhaustion**

The State is not arguing that any of Hendrix's habeas claims are barred by the failure to exhaust a claim for which a state court remedy exists.

**C.    Procedural Default**

The State asserts that Hendrix has procedurally defaulted claims I and II (labeled as II and III) as more fully discussed below.

**D.    Non-retroactivity Doctrine**

Hendrix may not rely on rules of law that were recognized after his conviction became final.  The State is not arguing that any of Hendrix's claims are barred by the non-retroactivity doctrine.

## Statement of the Case

### A.    Trial Facts

####     1.    Hendrix had a history of car theft.

On at least three prior occasions, Petitioner Joseph Hendrix stole a car.  In each case, he apparently waited until he saw someone leave their car with the keys in the car.  (3/20/2007 Jury Trial Tr. Vol. I ("Tr. I") at 93-98, 99-103, 105-109.)  He would then quickly jump into the car and drive off, later abandoning the car in a crack neighborhood in Detroit.  *Id.*  Hendrix's conviction for two of those incidents was entered into the record at trial.  (Tr. I at 110-111.)

There is often a necessity to steal a car to go to a crack neighborhood because addicts may have already given away their car for drugs and so have no transportation.  (3/21/2007 Jury Trial Tr. Vol. II ("Tr. II") at 39.)  And no one would want to lend a car to a crack addict because they may not get it back.  (Tr. II at 39.)  And even if someone has a car, they may not want to take it to a bad neighborhood for fear of having it stolen.  (Tr. II at 39.)

8

    2.    **On September 5, 2006, Hendrix stole Gina Doen's van, unaware that Gina's mother was still inside.**

On September 5, 2006, Gina Doen drove her five-year old daughter, Alissa, and her mother, Evangeline Doen, in her Dodge Caravan to the Vineyards strip mall. (Tr. I at 186-189.) Gina and her daughter went inside the Q Cleaners to drop off some clothes. (Tr. I at 190.) Gina's mother stayed in the van; she wasn't feeling very good and Gina was only going to be a few minutes. (Tr. I at 190.) Gina parked right near the door and left the keys in the ignition as her mother was still in the car. (Tr. I at 191-192.)

By the time Gina got out of the cleaners five minutes later, she saw her mother was around the bend on the right of Q Cleaners, laying on the ground. (Tr. I at 192.) Gina called the police and the paramedics; both arrived within about five minutes. (Tr. I at 194.)

Gina put her hand behind her mother's head to hold it and that was when she noticed it was full of blood. (Tr. I at 194-195.)

Once at the hospital, Evangeline Doen told police, through a nurse, that she was injured when a man got into the car she was in and pushed her out. (Tr. I at 119.) She said she was sitting in the front seat, waiting for her daughter to return. (Tr. I at 125.) A white man,

9

possibly wearing glasses, possibly wearing a brown T-shirt got in.  (Tr. I at 125.)  She said she told the young man that he got into the wrong car. (Tr. I at 125.)  She said that he told her to get out and started backing up the van.  (Tr. I at 125.)  While she was struggling with her seatbelt, the young man pushed her out of the van.  (Tr. I at 125.)

### 3.     Doen's van was recovered many hours later in Detroit, with Hendrix still inside.

Detroit Police Officer Kyle Bryent was driving on patrol at 1:40 a.m. on the morning of September 6, 2006, when he noticed a 2003 burgundy Dodge Caravan traveling southbound at a high rate of speed. (Tr. I at 138-139.)  Officer Bryent eventually caught up to the van when it was stopped at a gas station at Van Dyke and Nett.  (Tr. I at 141-142.)  That station is near a neighborhood of crack cocaine houses.  (Tr. I at 142.)  Only one person was in the van when Officer Bryent caught up to it: Joseph Hendrix.  (Tr. I at 142-143.)

### 4.     Ten days later, Evangeline Doen died of her injuries.

Evangeline Doen stayed in intensive care in the hospital for ten days before finally succumbing to her injuries.  (Tr. I at 195.)  She died on September 15, 2006.  (Tr. I at 195.)

### 5.    The Court of Appeals summary of the facts.

The Michigan Court of Appeals accurately summarized the facts adduced at trial as follows:

> The convictions arose out of an incident in which defendant carjacked an occupied van while it was parked at a strip mall. Defendant pushed the lone occupant out of the van as he drove away in the stolen vehicle. The victim suffered an injury to the back of her head when thrown from the van, eventually dying from a subdural hematoma associated with the fall.

*People v. Hendrix (On Remand)*, No. 277919, 210 WL 673294, at *1 (Mich. Ct. App. Feb. 25, 2010). This recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Hendrix  has not demonstrated through clear and convincing evidence that this summary is incorrect.

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v.*

11

*Mata*, 449 U.S. 539, 546-47 (1981)).  *See also McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous"); *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) ("[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct."); *Wainwright v. Goode*, 464 U.S. 78, 82-83 (1983) (writing that because "[a]t best, the record is ambiguous" and more than one "conclusion[ ] find[s] fair support in the record," the federal appellate court "erred in substituting its view of the facts for that of the [state court]").  *See also Tinsley v. Borg*, 895 F.2d 520, 526 (9th Cir. 1990) ("Even though the state appellate court is, in a sense, in no better position than we are to evaluate the state trial court record, [the habeas statute] requires us to accord the same presumption of correctness to its factual findings."); *Goodwin v. Johnson*, 132 F.3d 162, 183-84 (5th Cir. 1997) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.").

12

The State opposes any factual assertions made by Hendrix that are not directly supported by—or consistent with—the state court record, because Hendrix has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

**B.    Procedural History**

Hendrix was convicted of first-degree felony murder (Mich. Comp. Laws § 750.316(1)(b)), carjacking (§ 750.529a), and unlawfully driving away an automobile (UDAA) (§750.413). The trial court sentenced him to concurrent sentences of life without parole for the murder conviction, life for the carjacking conviction, and 3 to 5 years for the UDAA conviction.

Following his conviction and sentence, Hendrix filed a claim of appeal in the Michigan Court of Appeals, which raised the following claims:

I.    The trial court erred by admitting statements allegedly made by Hendrix when he had, on separate occasions, invoked his right to counsel, to remain silent, and had made an invalid *Miranda* waiver.

II.    The prosecution committed misconduct by using Hendrix's alleged statements against him and by

13

> misstating the substance of those statements, thus depriving him of his due process right to a fair trial.

> III.   Hendrix was denied the effective assistance of his attorney where his counsel failed to object to the introduction of Hendrix's statements or the prosecutorial misconduct.

> IV.   The trial court erred in permitting the introduction of other acts evidence to prove Hendrix's identity where there was insufficient similarity between the other acts and the crime in his case, thus violating Hendrix's due process right to a fair trial.

> V.   There was insufficient evidence to support Hendrix's convictions.

The Michigan Court of Appeals affirmed Hendrix's conviction in an unpublished opinion. *People v. Hendrix*, No. 277919, 2008 WL 4604063, at *1 (Mich. Ct. App. Oct. 16, 2008).

Hendrix  subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims as in the Michigan Court of Appeals.  The Michigan Supreme Court remanded to the Michigan Court of Appeals to address a single issue it had not previously addressed (the claim regarding the sufficiency of the evidence to establish Hendrix's identity as the carjacker), but otherwise denied the application because it was not persuaded that the other

14

questions presented should be reviewed by the Court. *People v. Hendrix*, 775 N.W.2d 796 (Mich. 2009) (unpublished table decision).

On remand, the Michigan Court of Appeals again affirmed Hendrix's convictions in an unpublished opinion. *People v. Hendrix (On Remand)*, No. 277919, 210 WL 673294, at *1 (Mich. Ct. App. Feb. 25, 2010). Hendrix subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Hendrix*, 785 N.W.2d 157 (Mich. 2010) (unpublished table decision).

Hendrix returned to the trial court and filed a motion for relief from judgment, which contained the following claims:

I.    Hendrix was denied his right to the effective assistance of counsel by his counsel's failure to investigate and find evidence of similar acts by unknown perpetrators, failure to present that evidence, failure to object to unfairly prejudicial evidence, and failure to object to prosecutorial misconduct.

II.   Hendrix was denied the effective assistance of appellate counsel by his appellate counsel's failure to raise these new claims of ineffective assistance of trial counsel and prosecutorial misconduct.

15

III.    Hendrix was denied due process by the prosecutor's
        misconduct, which included improper questioning,
        argument, and shifting of the burden of proof.

The trial court denied the motion for relief from judgment on the

merits.  (7/13/2012 Macomb Cir. Ct. Order at 1-5.)  After the trial court

denied the motion for relief from judgment, Hendrix filed an application

for leave to appeal in the Michigan Court of Appeals.  The Michigan

Court of Appeals denied the application for leave to appeal for failure to

establish entitlement to relief under Michigan Court Rule 6.508(D).

(10/8/2013 Mich. Ct. App. Order at 1.)  Hendrix applied for leave to

appeal this decision in the Michigan Supreme Court but was also

denied relief under Michigan Court Rule 6.508(D).  *People v. Hendrix*,

845 N.W.2d 104 (Mich. 2014) (unpublished table decision).

## Standard of Review Pursuant to AEDPA

Congress mandated the standards of review in federal habeas

proceedings in 1996 in AEDPA and it "prevent[s] federal habeas

'retrials'" and ensures that state-court convictions are given effect to the

extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94

(2002). AEDPA "drastically changed" the nature of habeas review.

*Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). "The limitations

imposed by AEDPA are several and significant." *Rice v. White*, 660

F.3d. 242, 250 (6th Cir. 2011).[1] The requirements of AEDPA "create an

_____

[1] The Supreme Court has emphasized that federal courts must adhere to AEDPA's stringent and limiting standards, reversing no fewer than 21 appellate AEDPA decisions since 2010. *See Metrish v. Lancaster*, 133 S. Ct. 1781 (2013); *Marshall v. Rodgers*, 133 S. Ct. 1446 (2013) (per curiam); *Johnson v. Williams*, 133 S. Ct. 1088 (2013); *Ryan v. Gonzales*, 133 S. Ct. 696 (2013); *Parker v. Matthews*, 132 S. Ct. 2148 (2012) (per curiam); *Coleman v. Johnson*, 132 S. Ct. 2060 (2012) (per curiam); *Howes v. Fields*, 132 S. Ct. 1181 (2012); *Hardy v. Cross*, 132 S. Ct. 490 (2011) (per curiam); *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (per curiam); *Cavazos v. Smith*, 132 S. Ct. 2 (2011) (per curiam); *Bobby v. Mitts*, 131 S. Ct. 1762 (2011) (per curiam); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305 (2011) (per curiam); *Swarthout v. Cooke*, 131 S. Ct. 859 (2011) (per curiam); *Premo v. Moore*, 131 S. Ct. 733 (2011); *Harrington v. Richter*, 131 S. Ct. 770, 781 (2011); *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *Renico v. Lett*, 559 U.S. 766 (2010); *Berghuis v. Smith*, 559 U.S. 314 (2010); *Thaler v. Haynes*, 559 U.S. 43 (2010) (per curiam); *Smith v. Spisak*, 558 U.S. 139 (2010); *McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam).

independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007). "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221 (1982).

Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts "adjudicated on the merits." 28 U.S.C. § 2254(d). Habeas relief may not be granted to Hendrix under § 2254(d) unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunction in the state criminal justice systems, not a

substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Federal courts performing habeas review do not act as "super-appellate state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). "The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure." *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal court's "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

AEDPA restricts the body of law a habeas court may consider. By its terms AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Because "[s]tate courts are not bound by the dictates of the lower federal courts," "a lower federal court's application of Supreme Court precedent is not inherently any more 'right' or 'correct' than that of state courts." *Evans v. Thompson*, 518 F.3d 1, 8 (1st Cir. 2008). "It is the Supreme Court, and the Supreme Court alone, that has the 'revising authority' to 'control [the state courts'] jarring and discordant judgments, and harmonize

them into uniformity.'"  *Id.* at 8 n.3 (quoting *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 348 (1816)); *see also Thayer v. Haynes*, 559 U.S. 43, 49 (2010) ("[W]e hold that no decision of this Court clearly establishes the categorical rule on which the Court of Appeals appears to have relied.").  Thus, under AEDPA, if there is no "clearly established Federal law, as determined by the Supreme Court" that supports a habeas petitioner's legal argument, the argument must fail.  *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

As the Supreme Court explained in *Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), "clearly established Federal law" referred to in § 2254(d)(1) includes Supreme Court decisions at the time of the state-court adjudication on the merits but does not include Supreme Court decisions issued after the state court merits decision but before Hendrix's conviction becomes final.  This is so because the purpose of federal collateral review is to uphold final state court judgments that were valid when entered, not as a "mechanism for the continuing reexamination of final judgments." *Sawyer v. Smith*, 497 U.S. 227, 234 (1990).

20

The only federal law that can be clearly established under §

2254(d) is Supreme Court precedent interpreting the Constitution.

*Early v. Packer*, 537 U.S. 3, 10 (2002).  Indeed, Supreme Court decisions

not based on constitutional grounds, e.g., decisions based on the Court's

supervisory powers, are "off the table as far as § 2254(d) is concerned."

*Id.*  Moreover, "[c]learly established law" under 28 U.S.C. § 2254(d)(1) is

"the *holdings*, as opposed to the dicta, of this Court's decisions."

*Metrish v. Lancaster*, 133 S. Ct. 1781, 1792 (2013) (quoting *Taylor*, 529

U.S. at 412 (2000)).  And merely distinguishing Supreme Court

precedent is insufficient to establish the entitlement to habeas relief.

*Lancaster*, 133 S. Ct. at 1792.

With respect to § 2254(d)(1), a state court decision is "contrary to"

federal law only "if the state court arrives at a conclusion opposite to

that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts."  *Taylor*, 529 U.S. at 412-13.  A state

court decision "involves an unreasonable application of clearly

established Federal law" pursuant to § 2254(d)(1) if "'the state court

identifies the correct governing legal principle from [the Supreme]

21

Court decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Further, "'[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Visciotti*, 537 U.S. at 24-25). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A federal habeas court "fails to give proper deference to state courts by conflating error (even

22

clear error) with unreasonableness." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Deference must be given even in cases "where the state court's reasoning is flawed or abbreviated." *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009). In habeas review, the federal courts look at the "result that the state court reached, not 'whether [its decision] [was] well reasoned.'" *Robinson v. Polk*, 438 F.3d 350, 358 (4th Cir. 2006) (quoting *Wilson v. Ozmint*, 352 F.3d 847, 855 (4th Cir. 2003)).

Moreover, "[u]nder *Johnson v. Williams* and *Richter*, it is clear that a bad reason does not necessarily mean that the ultimate result was an unreasonable application of established doctrine. A state court could write that it rejected a defendant's claim because Tarot cards dictated that result, but its decision might nonetheless be a sound one. If a state court's rationale does not pass muster . . . , the only consequence is that further inquiry is necessary." *Brady v. Pfister*, 711 F.3d 818, 827 (7th Cir. 2013).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Richter*, 131 S. Ct. at 786. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87; *accord Lancaster*, 133 S. Ct. at 1786-87.

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. Furthermore, the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 785-86 (quoting *Yarborough*, 541 U.S. at 664). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

When a federal claim has been presented to a state court, and the state court denies relief, a rebuttable presumption arises that the state court adjudicated the federal claim on its merits, irrespective of whether the court explicitly discusses the federal claim. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). Indeed, it is the result to which deference is owed, not the opinion expounding it. As explained in *Rashad v. Walsh*, 300 F.3d 27, 45 (1st Cir. 2002), "[i]t is not our function . . . to grade a state court opinion as if it were a law school examination." Even if "the state court clearly applied an incorrect standard," then we must nonetheless decide whether "it reached the correct outcome." *West v. Bell*, 550 F.3d 542, 554 (6th Cir. 2008). A federal habeas court ultimately "review[s] for reasonableness the state court's ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).

The Supreme Court has also consistently drawn a distinction between state court decisions applying a broad constitutional standard and those that apply a narrow rule. As explained in *Yarborough v. Alvarado*, where a general standard is at issue, state court decisions are given greater leeway:

25

> If a legal rule is specific, the range may be narrow.
> Applications of the rule may be plainly correct or incorrect.
> Other rules are more general, and their meaning must
> emerge in application over the course of time. Applying a
> general standard to a specific case can demand a substantial
> element of judgment. As a result, evaluating whether a rule
> application was unreasonable requires considering the rule's
> specificity. The more general the rule, the more leeway
> courts have in reaching outcomes in case by case
> determinations.

*Yarborough*, 541 U.S. at 664; *accord Renico v. Lett*, 599 U.S. 766, 776

(2010). Open-ended standards give states wide berth on habeas review.

*Richter*, 131 S. Ct. at 786. Thus, in *Knowles v. Mirzayance*, 556 U.S.

111, 114 (2009), the Court held that ineffective-assistance-of-counsel

claims must be given extra latitude in light of the general nature of the

rule: "[B]ecause the *Strickland* standard is a general standard, a state

court has even more latitude to reasonably determine that a defendant

has not satisfied that standard."

Furthermore, with respect to § 2254(d)(2), a determination of a

factual issue made by the state courts shall be presumed correct and

may be rebutted only by clear and convincing evidence. 28 U.S.C. §

2254(e)(1); *Landrigan*, 550 U.S. at 473-74. Facts found by a state

appellate court enjoy the same presumption. *Lundgren v. Mitchell*, 440

F.3d 754, 763 (6th Cir. 2006). Where a state court's factual findings are

26

not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000) ("[A]n implicit finding of fact is tantamount to an express one, such that deference is due to either determination." *Id.* at 286 (citing *Parke v. Raley*, 506 U.S. 20, 35 (1992))). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (noting that even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination"). And, as explained in *Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007), a state court's resolution of an issue in the Hendrix's favor is not entitled to deference

27

under AEDPA because the "standard of review is a precondition to the grant of habeas relief . . . not an entitlement to it."

Lastly, the Supreme Court has held that "review under § 2254(d)(1) focuses on what a state court knew and did." *Pinholster*, 131 S. Ct. at 1399. Therefore, review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398.

If the state court adjudicated any of Hendrix's claim on the merits, this Court must deny any attempt by Hendrix to supplement the state court record, whether through an evidentiary hearing, discovery, or the presentation of new evidence in light of United States Supreme Court precedent. *Pinholster*, 131 S. Ct. 1388 (2011); *accord Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013) ("While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* preclude it.").

If any of Hendrix's claims were procedurally defaulted or otherwise not adjudicated on the merits, he has not demonstrated entitlement to a federal evidentiary hearing because the petition may

28

be denied based on the existing record.  *See* 28 U.S.C. § 2254(e)(2).  *See also Pinholster*, 131 S. Ct. at 1398 (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").  In *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the United States Supreme Court held that "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  The Court held that "[i]t follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

## Argument

### I.  Hendrix has abandoned all of his habeas claims because none of them are adequately presented in his petition.

Hendrix has abandoned all of his habeas claims because none of them are adequately presented in his petition.  He (through his attorney) merely lists what his alleged issues are and makes no argument for any of them.  While courts will often construe a petitioner's pro se pleadings liberally, such a courtesy does not extend to an attorney's filings; an attorney should know better.  Hendrix cannot get around this with a claim of ineffective assistance of counsel for his habeas petition because he has no constitutional right to effective counsel (or any counsel at all) for a habeas proceeding.  Hendrix's habeas petition should therefore be dismissed for failure to adequately present even a single issue.

### A.  The law regarding District Court habeas pleadings.

Prisoner pro se pleadings are given the benefit of liberal construction.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But there are limits.  Only reasonable factual inferences are to be drawn in a petitioner's favor.  *McKinnley v. De Bord*, 507 F.2d 501, 504 (9th Cir.

30

1974). And a federal court is *not* required to construct legal arguments for a pro se petitioner. *Small v. Endicott*, 998 F.2d 411, 417-418 (7th Cir. 1993) (The District Court was correct in summarily dismissing a ground which failed to state a claim); *see also Jones v. Gomez*, 66 F.3d 199, 204-205 (9th Cir. 1995) (Conclusory claim argued without reference to the record or any document does not meet specificity requirement, and therefore was properly denied.) And of course, it is manifest that if a court won't make an argument for a pro se petitioner, it certainly will not do so for a petitioner represented by counsel, as Hendrix is in this case.

Where a petitioner fails to adequately present a claim in his habeas petition, that claim is forfeited. *Pole v. Randolph*, 570 F.3d 922, 937-938 (7th Cir. 2009), cert denied, 130 S. Ct. 562 (2009). This deficiency cannot be corrected by a petitioner by making the argument in later pleadings. *Id*. at 938-939. While it may be arguable exactly how long a petitioner may have to file supplemental argument, he should at least be required to file what amounts to any argument at all sufficiently before the due date of the State's response to his petition or else the State would have nothing to respond to. Thus, by the time of

31

the due date for the answer (or really a reasonable time before that due date, to give the State time to respond), a petitioner should have filed his arguments or they should be considered abandoned.

## B.   Hendrix's petition merely presents a bullet list of alleged claims with no argument whatsoever.  His claims are therefore abandoned.

Hendrix's attorney filed his petition as a simple list of alleged claims with no argument whatsoever.  As noted above, while a pro se petitioner's claims would be construed liberally, an attorney gets no such benefit of the doubt.  And even a pro se petitioner must still make an argument, including citations to the record and to clearly established United States Supreme Court authority to support his claims, otherwise they are considered forfeited.  *Pole*, 570 F.3d at 937-938.

There was nothing stopping Hendrix's attorney from filing a brief with actual arguments in support of his issues with his petition (or just making the brief the petition itself).  And now, regardless of what he may later file, it will not change the fact that as of the time the State's answer was due, Hendrix had not made any argument in support of any of his claims.  And even if he were to file something containing argument at some point in the future, it would be too late.  As noted

32

above, a petitioner cannot remedy a failure to adequately present a habeas claim with a late pleading.  *Pole*, 570 F.3d at 938-939.

Further, Hendrix's failure to file any argument in support of any of his claims cannot be excused by a claim that his habeas counsel was ineffective; such a claim would only apply if Hendrix were constitutionally entitled to counsel for his habeas petition, and he is not. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (No right to counsel for collateral proceedings).

Finally, if this Court were to disagree with the State's position and if this Court then allowed Hendrix's attorney to file a later brief with actual arguments and analysis in support of his claims, given its lateness, the State would ask for 90 days to respond.

While Hendrix has presented no argument for any of his claims, providing nothing for the State to respond to in its answer, the State does have the claims raised in state court.  The State will briefly address each of Hendrix's claims to the extent it can discern their corresponding claims from state court.

II. **When a defendant understands and voluntarily waives his *Miranda* rights, his statements to police may be used in court. Such a waiver does not need to be in writing. In this case, after police informed him of his rights, Hendrix refused to sign a written waiver, but he verbally indicated he understood his rights and then he voluntarily made statements to police. The state court thus reasonably concluded that Hendrix validly waived his *Miranda* rights.**

Hendrix claims his custodial statements should have been suppressed as violative of his *Miranda* rights because he never signed the written waiver form. But he was verbally told his rights, he said he understood them, and he then voluntarily made statements to police on two occasions. There was no evidence in the record to contradict this, nor to indicate that he was in any way impaired. Thus, the state court reasonably concluded that Hendrix was fully informed of his rights and voluntarily waived them. Hendrix is not entitled to relief for this procedurally defaulted claim.

The Michigan Court of Appeals procedurally defaulted and/or considered and denied this claim on the merits during Hendrix's direct appeal by applying the correct constitutional standard in a manner that was not objectively unreasonable:

34

Defendant first contends the trial court erred in admitting statements he made to the police because he never validly waived his *Miranda*[1] rights.  We disagree. Because defendant failed to preserve this issue, this Court reviews for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

---

[1] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

---

In arguing that defendant's waiver of his Miranda rights was invalid, defendant primarily relies on two police reports and a waiver of rights form that have been attached to his brief on appeal. None of these documents were introduced at trial. A party may not expand the record on appeal. *People v Williams*, 241 Mich App 519, 524 n 1; 616 NW2d 710 (2000). Consequently, the submitted documents will not be considered in analyzing this or any other issue on appeal.

The evidence presented at trial established that on September 6, 2006, defendant was being transported to Shelby Township from Detroit. During the drive, defendant was advised of his rights, indicated that he understood his rights, and did not request an attorney. Defendant proceeded to make minimal comments to police officers. These comments were essentially limited to defendant stating that he was not sure how he came in to possession of the van and that, as a result of a conversation with the Detroit police, he did not wish to say any more. The record then shows that on September 8, 2006, defendant was approached by Detective Terrence Hogan and again was read his rights. While defendant refused to sign a waiver of rights form, he indicated that he was willing to talk. He would not state how he came to possess the van, and repeatedly stated that he

35

would be cleared of any guilt, that the Detroit Police knew the truth, and that he did not want to get into any more trouble. He also stated that at some point on the day in question he was at a 7-11 store in Sterling Heights from which he called his grandmother.

The trial court did not commit plain error in admitting the evidence of defendant's statements to the police as the evidence establishes that defendant was informed of his rights, indicated that he understood his rights, and indicated that he was willing to speak to the police. For a waiver of *Miranda* rights to be valid, the waiver must be voluntary, knowing and intelligent. *People v Daoud*, 462 Mich 621, 633; 614 NW2d 152 (2000). There is simply no evidence properly before this Court to establish that one of these requirements was lacking. In addition to the documents defendant attempts to submit on appeal, defendant implies that the evidence at trial established that he may have been under the influence of drugs on September 6, 2006, when he was arrested and first questioned. However, no evidence was presented that defendant was under the influence of drugs at any time that he was interacting with police. Furthermore, defendant asserts that the trial transcript demonstrates he requested an attorney upon being arrested. Upon reviewing the entire transcript closely, this Court has found no such evidence. Because the evidence demonstrates the waiver was voluntary, knowing, and intelligent, the trial court properly admitted defendant's statements.

[*People v. Hendrix*, No. 277919, 2008 WL 4604063, at *1-2 (Mich. Ct. App. Oct. 16, 2008).]

## A.   Hendrix's claim is procedurally defaulted

To the extent a petitioner deprives the state court of the opportunity to review his claims by failing to follow reasonable state-court procedures, review of the claims is barred.  "[P]rocedural default

results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). In this case, Hendrix's claim of a *Miranda* violation is procedurally defaulted because it was unpreserved at trial and so reviewed for only plain error on appeal.

Hendrix failed to comply with a state procedural rule that requires defendants to preserve issues for appeal by contemporaneous objection. The last state court to issue a reasoned opinion on his claim was the Michigan Court of Appeals, which denied relief because Hendrix failed to establish plain error. This reason for denying relief constitutes a procedural default.

A State prisoner who fails to comply with a State's procedural rule waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged

37

constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690-91 (6th Cir. 2007). A petitioner must present a substantial reason to excuse the default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994); *see also Amadeo v. Zant*, 486 U.S. 214, 222-23 (1988) (reviewing a claim that a document was concealed by officials). One recognized reason includes attorney error rising to the level of ineffective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). This procedural default is not excused by the ineffective assistance of counsel claim as explained hereafter.

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004);

38

*Carrier*, 477 U.S. at 496. A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To show that his case is the "extraordinary" one warranting application of this exception, Hendrix must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 321, 327. Hendrix has not presented any new, reliable evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Hendrix's claim. This claim is procedurally defaulted, and habeas relief is barred.

**B.    The law regarding the Fifth Amendment and *Miranda*.**

The Fifth Amendment guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. To achieve this objective, the Supreme Court devised a mandatory procedure—the *Miranda* warnings—for law enforcement

39

officers to follow before interrogating a suspect in custody. The suspect must be informed prior to any questioning that he "has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). These warnings are constitutionally required in order to combat the "'compelling pressures' inherent in custodial police interrogation . . . and to permit a full opportunity to exercise the privilege against self-incrimination" guaranteed by the Fifth Amendment. *Dickerson v. United States*, 530 U.S. 428, 440 (2000) (quoting *Miranda*, 384 U.S. at 467). According to Miranda, "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Miranda*, 384 U.S. at 467.

Once warnings have been given, if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. *McGraw v. Holland*, 257 F.3d 513, 518 (6th Cir. 2001) (quoting *Miranda*, 384 U.S. at 473-474). No further questioning may take place at that point unless counsel is

present. *Monjejo v. Louisiana*, 556 U.S. 777, 794 (2009).  But this is only true where a defendant has made a clear and unambiguous assertion of his right to counsel or to remain silent. *Texas v. Cobb*, 532 U.S. 162, 175-176 (2001); *Davis v. United States*, 512 U.S. 452, 459 (1994).

### C.    Hendrix never unequivocally invoked his right to silence after he was advised of his rights.  To the contrary, he was read his rights, he stated he understood his rights, and then he voluntarily spoke with police.

As the state court noted, Hendrix was advised of his rights both orally and in writing.  While he did not sign a written waiver, he verbally indicated that he understood his rights.  There was no record evidence that he was under the influence or in any way impaired.  And there was nothing on the record to indicate he ever invoked his right to counsel.

Thus, the state court reasonably concluded that Hendrix understood and voluntarily waived his right to remain silent or have an attorney present during police questioning.  So the state court's conclusion that admitting Hendrix's custodial statements did not

violate Hendrix's right to counsel or to remain silent was a reasonable interpretation of the appropriate constitutional standard.

Hendrix is not entitled to habeas relief for this procedurally defaulted claim.

**III.   A prosecutor must abstain from behavior that prevents a defendant from receiving a fair trial.  Hendrix is not entitled to habeas relief regarding his prosecutor misconduct claim because he has not established misconduct of such a magnitude as to deny him a fair trial.  The state court ruling rejecting this claim procedurally defaulted the claim and/or was not contrary to, nor involved an unreasonable application of Supreme Court case law.**

Hendrix claims that the prosecutor engaged in multiple instances of misconduct.  As Hendrix failed to raise these claims in his original appeal, this claim is procedurally defaulted.  Further, even if this claim were preserved, it is wholly without merit.  The prosecutor did not mischaracterize testimony about Hendrix's phone call from a 7-11 nor did he improperly comment on post-arrest silence.  The prosecutor used the call as evidence of Hendrix's location near the time of the crime.  And with regard to his *Miranda* rights, there was no improper use of post-arrest silence; Hendrix willingly waived his right to remain silent and voluntarily spoke to police, as noted in Issue II above.  Hendrix is not entitled to relief for this claim.

The Michigan Court of Appeals procedurally defaulted and/or considered and denied this claim on the merits during Hendrix's direct

appeal by applying the correct constitutional standard in a manner that

was not objectively unreasonable:

> Defendant next asserts the prosecution denied him a
> fair trial by misusing and misstating defendant's statements
> to police. We disagree. This Court reviews the unpreserved
> claims of alleged prosecutorial misconduct for plain error
> affecting defendant's substantial rights. *Carines*, *supra* at
> 763-764.

> In general, a prosecutor is granted great latitude in his
> closing argument. *People v Bahoda*, 448 Mich 261, 282; 531
> NW2d 659 (1995). He "is free to argue the evidence and all
> reasonable inferences from the evidence as it relates to his
> theory of the case." *People v Gonzalez*, 178 Mich App 526,
> 535; 444 NW2d 228 (1989). Typically, a prosecutor may not
> comment on a defendant's post-arrest silence. *People v
> Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003).
> However, "[w]here a defendant makes statements to the
> police after being given Miranda warnings, the defendant
> has not remained silent, and the prosecutor may properly
> question and comment with regard to the defendant's failure
> to assert a defense subsequently claimed at trial." *People v
> Avant*, 235 Mich App 499, 509; 597 NW2d 864 (1999).

> Defendant asserts that the prosecutor improperly
> misconstrued testimony about defendant's collect phone call
> and improperly commented on defendant's post-arrest
> silence. In regard to the evidence regarding the phone call,
> defendant mischaracterizes the prosecution's use of that
> evidence. Defendant asserts that the prosecution implied
> that defendant attempted to utilize the call as an alibi.
> Rather, it appears that the purpose of the questions and
> comments on the phone call was simply to place defendant in
> the general area of the alleged crimes. During closing
> arguments, the prosecution did not emphasize when the
> phone call took place, but emphasized that defendant would
> not say where the 7-11 was located. The implication was that

defendant did not want to reveal that he had been at a 7-11 close to the scene of the theft. As such, the prosecution did not misconstrue the evidence.

In regard to the commentary on defendant's failure to provide a defense while speaking with the police, we have already concluded that the evidence properly before this Court establishes that defendant waived his *Miranda* rights and willingly spoke to the police. Thus, the prosecution was permitted to introduce defendant's statements and comment on his inability to assert a defense that was subsequently asserted at trial. *Avant, supra.* At trial, defendant advanced the theory that he came into possession of the van after it was taken from the parking lot in Shelby Township. The prosecutor properly commented on the fact that defendant never provided any such indication while speaking to police. Furthermore, defendant cannot establish that he was prejudiced where there was overwhelming circumstantial evidence presented at trial in support of his conviction.

[*People v. Hendrix*, No. 277919, 2008 WL 4604063, at *2-3 (Mich. Ct. App. Oct. 16, 2008).]

## A.  Hendrix's claim of prosecutorial misconduct is procedurally defaulted.

For the same reasons outlined in Issue II, this claim is procedurally defaulted.  Also as noted in Issue II, while procedural default bars habeas relief, it is not jurisdictional, and so if an issue is resolvable against the habeas petitioner, this Court may rule that a procedurally defaulted issue is nonetheless meritless.  Under such circumstances, the State argues in the alternative that this claim does not merit habeas relief.

45

## B.    Law Regarding Prosecutor Misconduct Claims.

It is well-established that prosecutors may not use "improper methods calculated to produce a wrongful conviction." *United States v. Young*, 470 U.S. 1, 7 (1985) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).  However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004); *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir.2006). "[T]he Supreme Court  has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir.2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986).  *See also Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012) (referring to the *Darden* standard as a "very general one, leaving [state] courts more leeway … in reaching outcomes in case-by-

46

case determinations." (Internal quotation marks and citation omitted)."

Claims of prosecutorial misconduct may result in habeas relief only if

the improper statements "so infected the trial with unfairness as to

make the resulting conviction a denial of due process." *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974).  In order to warrant relief, the

prosecutor's misconduct must be so improper and flagrant as to result

in a fundamentally unfair trial.  *Johnson v. Bagley*, 544 F.3d 592, 596

(6th Cir. 2008); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999).

The "category of infractions that violate 'fundamental fairness' is a very

narrow one."  *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct.

668, 107 L. Ed. 2d 708 (1990).  "When a petitioner makes a claim of

prosecutorial misconduct, 'the touchstone of due process analysis . . . is

the fairness of the trial, not the culpability of the prosecutor.'"

*Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002) (quoting *Smith v.*

*Phillips*, 455 U.S. 209, 219 (1982)).  To constitute a denial of due

process, prosecutorial misconduct must be so pronounced and persistent

that it permeates the entire atmosphere of the trial.  *Byrd v. Collins*,

209 F.3d 486, 529 (6th Cir. 2000).

47

In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Young*, 470 U.S. at 11-12.

Moreover, even if it is determined that the prosecutor's misconduct amounted to constitutional error, federal habeas relief may not be granted unless such error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman*, 525 U.S. 141, 145, 119 S. Ct. 500, 142 L. Ed. 2d 521 (1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), in turn quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946)).  To sustain a claim of prosecutorial misconduct, Petitioner must show that the alleged misconduct resulted in actual prejudice.  *Brecht*, 113 S. Ct. at 1722 (citing *United States v. Lane*, 474 U.S. 438, 449, 88 L. Ed. 2d 814, 106 S. Ct. 725 (1986)).

48

When reviewing claims of prosecutorial misconduct during closing argument, the court must afford wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone do not justify reversal where the proceedings were otherwise fair. *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008). The Sixth Circuit has recognized that "[a] prosecutor is permitted a certain degree of latitude in summation." *United States v. Barker*, 553 F.2d 1013, 1025 (6th Cir. 1977). It is critical that a court examine the prosecutor's remarks in their context. *Hall v. Vasbinder*, 563 F.3d 222, 234 (6th Cir. 2009) (citing *United States v. Robinson*, 485 U.S. 25, 33 (1988)). The Sixth Circuit has expressed great "reluctan[ce] to grant petitions based on improper prosecutorial statements at closing [or rebuttal] argument." *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. 2001).

Otherwise improper prosecutorial remarks might not require reversal if they address issues raised by defense counsel. "The prosecutors' comments must be evaluated in light of the defense argument that preceded it." *Darden*, 477 U.S. at 179. The United States Supreme Court has recognized that the doctrine of invited

response has an appropriate place in determining whether the prosecutor's closing remarks affected the fairness of a trial. *Young*, 470 U.S. at 12-13. *See also United States v. Robinson*, 485 U.S. 25, 31 (1988) (holding that when the prosecutor's statement that the defendant could have explained his story to the jury was made in response to the comments made by defense counsel, the prosecutor's statements did not infringe the defendant's Fifth Amendment rights). Under the doctrine of invited response, the proportionality of the response, as well as the invitation, must be considered to determine whether the error, which might otherwise require reversal, is shielded from appellate relief. *Young*, 470 U.S. at 12-13.

Finally, and importantly, general jury instructions may cure prosecutorial misconduct, even if the instructions do not specifically address the erroneous remarks. *See, e.g., United States v. Mapp*, 170 F.3d 328, 337-38 (2d Cir. 1999) (prosecutor's summation that arguably "impermissibly suggested . . . that [defendant]   has any burden of proof" not reversible error because any prejudice was eliminated by court's instructions); *Garofolo v. Coomb*, 804 F.2d 201, 206 (2d Cir. 1986) (("This is not to say that the prosecutor's remarks were proper or

appropriate; they were not, but curative instructions were given by the trial judge."); *McEachin v. Ross*, 951 F. Supp. 478, 482-83 (S.D.N.Y. 1997) (rejecting misconduct claim, in part based on court's curative jury charge).

**C.    The prosecutor did not commit any prejudicial misconduct in his closing.**

None of what Hendrix complains of from the prosecutor's closing statement amounts to prejudicial misconduct.

As the state court noted, the prosecutor's commentary about his phone call from a 7-11 was related to the location of the call and the time of the call, not to the call itself or what he said.  The prosecutor used it to establish Hendrix's location around the time of the carjacking. There was nothing improper in this.

And also as the state court noted, and as was noted in Issue II above, there was nothing improper about introducing Hendrix's statements to the police.  He was given the proper warnings, which he understood, and then he volunteered statements to the police.  Those statements were admissible and, as such, the prosecutor was free to comment on them in his argument.

51

In sum, none of Hendrix's claimed prosecutorial misconduct was actually misconduct, and therefore, even if this issue were to be considered on the merits, Hendrix would not be entitled to habeas relief.

## IV. To demonstrate ineffective assistance of trial counsel, Hendrix must show that his attorney rendered deficient performance and actual prejudice. Habeas relief should be denied because the state court determination that Hendrix was not denied the effective assistance of trial counsel was not contrary to, nor an unreasonable application of *Strickland.*

Hendrix claims that his trial counsel was ineffective for not objecting to the admission of his statements to police and for not objecting to the prosecutor's commentary on those statements and on his phone call to his grandmother from the 7-11. As was noted in Issues II and III above, both of those claims are meritless. As Hendrix's counsel cannot be faulted for failing to raise meritless issues, Hendrix's counsel was not ineffective for failing to raise these issues. Therefore, Hendrix's claim of ineffective assistance of trial counsel lacks merit.

The Michigan Court of Appeals considered and denied this claim on the merits during Hendrix's direct appeal by applying the correct constitutional standard in a manner that was not objectively unreasonable:

> Defendant next asserts that he was denied the effective assistance of counsel. We disagree. Defendant's claim that he was denied effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Leblanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). While the trial court's

factual findings are reviewed for clear error, the questions of constitutional law are reviewed de novo. *Id*. Because defendant failed to preserve this issue, this Court is limited to reviewing errors that are evident on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To prevail on a claim of ineffective assistance of counsel, defendant must establish that his attorney's assistance "fell below an objective standard of reasonableness and that this was so prejudicial to him that he was denied a fair trial." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). There is a strong presumption that defense counsel's actions were sound trial strategy. Id. In order to demonstrate prejudice, defendant must establish that there is a reasonable probability that, but for the mistakes of his attorney, the result of the trial would have been different. *People v Mitchell*, 454 Mich 145, 167; 560 NW2d 600 (1997). The United States Supreme Court has further stated that the proper inquiry is whether, as a result of counsel's performance, the outcome of the trial was fundamentally unfair, unreliable or prejudicial. *Lockhart v Fretwell*, 506 US 364, 369; 113 S Ct 838; 122 L Ed 2d 180 (1993).

Based on the evidence properly before this Court, defendant has failed to establish that his attorney's performance fell below on objective level of reasonableness. The evidence demonstrates that defendant voluntarily, knowingly and intelligently waived his rights after being informed of them on September 6, 2006. His subsequent statements to police could therefore be admitted at trial and the prosecution was permitted to comment on his failure to provide a defense. Defense counsel is not required to make a futile objection. *People v Wilson*, 252 Mich App 390, 393-394, 397; 652 NW2d 488 (2002).

[*People v. Hendrix*, No. 277919, 2008 WL 4604063, at *3 (Mich. Ct. App. Oct. 16, 2008).]

54

### A.   The Law regarding Ineffective Assistance of Trial Counsel.

A defendant's right to counsel under the Sixth Amendment includes the right to effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). The standard for reviewing a claim of ineffective assistance of counsel is the familiar two-prong test set forth in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  See also *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

With respect to prejudice, a challenger must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (citations omitted).

A petitioner must meet both prongs of the test, but courts are not required to conduct an analysis under both; thus, a court need not address the question of competence if it is easier to dispose of the claim due to the lack of prejudice. *Strickland*, 466 U.S. at 697 (if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice, . . . that course should be followed."); *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, U.S., 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). Unlike the performance prong of the *Strickland* test, which is analyzed at the time of trial, the prejudice prong of the *Strickland* test is examined under the law at the time the ineffective assistance claim is evaluated. *See Lockhart v. Fretwell*, 506 U.S. 364, 367-68 (1993) ("the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission." *Id.* at 374. *Bobby v. Van Hook*, 130 S .Ct. 13, 17 (2009) ("[j]udging counsel's conduct in the 1980's on the basis of these 2003 [ABA] Guidelines – without even pausing to consider whether they reflected the prevailing professional practice at the time of the trial – was error.") *See also Pavel v. Hollins*, 261 F.3d 210, 217, n 9 (2d Cir. 2001), the focus "must be on the reasonableness of decisions when they were made, not on how reasonable those decisions seem in retrospect.")

Because an ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-690.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To show that deficient performance prejudiced the defense "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

[A] state prisoner seeking a federal writ of habeas corpus on the ground that he was denied effective assistance of counsel must show more than simply that he meets the *Strickland* standard. *Henry v. Poole*, 409 F.3d 48, 67 (2d Cir. 2005). On habeas review under AEDPA, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but

58

whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007)).  "Because the *Strickland* standard is a general standard, a State court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. at 123.  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v Richter*, 131 S. Ct. 770, 788 (2011).

The Supreme Court has recently stressed, the "standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. 770 (quoting *Knowles*).  Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable

59

argument that counsel satisfied *Strickland's* deferential standard. *Richter*, 131 S. Ct. at 788.

Further, the reviewing court is required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did. *Pinholster*, 131 S. Ct. at 1407. "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 131 S. Ct. at 790. "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" ago "is precisely what *Strickland* and AEDPA seek to prevent." *Richter*, 131 S. Ct. at 789. Finally, it should be borne in mind that the United States Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *see also Pinholster*, 131 S. Ct. at 1388 (holding that "[t]his is a difficult to meet' and 'highly deferential standard for evaluating state-court rulings'") (citing *Richter*, 131 S. Ct. at 786 and *Woodford*, 537 U.S. at 24).

60

**B.    Hendrix was not denied the effective assistance of trial counsel.**

As noted above, the underlying claims in Issues II and III are meritless.  Therefore, Hendrix's counsel was not ineffective for failing to raise those claims.  "Counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. U.S.*, 162 F.3d 456, 459 (6th Cir. 1998).

Hendrix is not entitled to habeas relief for this claim.

**V.   The trial court's evidentiary ruling allowing other bad acts into evidence is a non-cognizable issue of state law and so cannot form the basis for habeas relief. Additionally, even if it were cognizable, the trial court appropriately admitted Hendrix's other bad acts into evidence.**

Hendrix claims that the trial court violated due process by admitting other bad acts evidence about his other car thefts utilizing the same basic elements.  This state evidentiary ruling is a non-cognizable issue of state law and so cannot form the basis for habeas relief.  Further, even if this were a cognizable issue, Hendrix would still not be entitled to relief as the Hendrix has not cited any relevant U.S. Supreme Court precedent in support of his position, and further, the state court's evidentiary ruling was entirely appropriate as relevant evidence of a common plan or scheme and of his modus operandi, as the state trial court noted.  Hendrix is not entitled to habeas relief for this issue.

Hendrix first raised this issue on direct appeal.  The Michigan Court of Appeals denied relief stating:

> Defendant next contends that the trial court erred in admitting evidence of his prior involvement with stolen automobiles pursuant to MRE 404(b). We disagree. The propriety of a trial court's admission of evidence is reviewed

for an abuse of discretion. *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002).

Evidence of a criminal defendant's prior bad acts is generally not admissible at trial in order to ensure that the defendant is afforded a fair trial based on the evidence, rather than on his prior actions. *People v Starr*, 457 Mich 490; 577 NW2d 673 (1998). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The above list of exceptions is not exclusive. *People v Sabin*, 463 Mich 43, 56; 614 NW2d 888 (2000). To be admissible pursuant to MRE 404(b), the prosecutor must offer the evidence for something other than a theory of propensity, the evidence must be relevant and the probative value of the evidence must not be substantially outweighed by its prejudicial effect. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). The trial court may provide a limiting instruction if one is so requested. Id. The wrongful admission of evidence of prior bad acts does not in itself justify reversal; rather, a defendant must show the error was most likely outcome determinative. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001.

Defendant and the prosecution assert different controlling tests on this issue. Defendant contends that for evidence of prior bad acts to be admitted, the prior act and the accused act must possess "uncommon, and distinctive

63

characteristics as to suggest the handiwork or signature of a single actor, the defendant." *People v Golochowicz*, 413 Mich 298, 319; 319 NW2d 518 (1982). The prosecution contends that *Golochowicz* has been overruled, and that the court's ruling in this case was proper if the evidence was offered for a proper purpose, was relevant, and the probative value was not outweighed by unfair prejudice. *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993). Upon review, it is clear that *VanderVliet* did not expressly overrule *Golochowicz*, but did state that *Golochowicz* only applied to the limited instance where prior act evidence was introduced as a modus operandi that demonstrated identity. Here, the prior bad act evidence demonstrated motive, knowledge, and a common scheme. However, because the prosecution's argument heavily implied that the evidence of the prior acts established defendant's identity as the perpetrator of the accused crimes, this Court will apply the *Golochowicz* test.

Applying *Golochowicz*, we conclude that the trial court did not abuse its discretion in admitting the evidence of defendant's prior acts. Contrary to defendant's assertions, the prior acts were remarkably similar to the accused carjacking and unlawful driving away of a motor vehicle. On three occasions before the day in question, defendant was implicated in car thefts that occurred when a motorist parked a vehicle in the same general area of Shelby Township, left the doors unlocked and the keys in the vehicle. In each instance, the vehicle was taken without confronting the driver. In the last two instances, the stolen vehicles were subsequently taken to the same neighborhood in Detroit as the neighborhood defendant was arrested in on September 6, 2006. The similarities are numerous and not merely superficial. The prior acts are sufficiently unique to qualify as a signature as required by *Golochowicz*.

In addition to being sufficiently similar, the probative value of the prior act evidence was not outweighed by the likelihood of unfair prejudice. The evidence in question was certainly prejudicial. However, its probative value was

2:11-cv-14659-AC-MKM   Doc # 12   Filed 10/30/14   Pg 65 of 99   Pg ID 90

likewise high. There was little evidence that defendant was the individual who took the van in question from the Shelby Township parking lot. Rather, the evidence merely established that he later possessed the stolen van in a Detroit neighborhood. By introducing the prior act evidence, the prosecution was able to show that defendant did not merely obtain possession of the vehicle after someone else stole it, as he had a pattern of stealing cars from the same neighborhood and in the same manner. Furthermore, the trial court instructed the jurors that the evidence of the prior acts could only be considered to show that defendant previously used a similar scheme or to demonstrate the identity of the person who committed the crimes in question. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Therefore, defendant is not entitled to relief.

In discussing the admission of the MRE 404(b) evidence, defendant also challenges Detective Hogan's testimony that no additional cars were stolen in a similar manner after defendant was taken into custody. That evidence is not properly classified as MRE 404(b) evidence as it is not evidence of a prior act committed by defendant. To the contrary, it is evidence of a lack of an occurrence. Therefore, the general test of admissibility applies.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Generally, relevant evidence is admissible and irrelevant evidence is not. MRE 402. Even when relevant, evidence may be excluded where it is substantially more prejudicial than probative, if it causes confusion, if it is cumulative or if it misleads the jury. MRE 403. Defendant has cited no authority to support his position that it was improper to introduce testimony that he remained in custody after his arrest. Rather, defendant cites to *Estelle v Williams*, 425 US

501, 504; 96 S Ct 1691; 48 L Ed 2d 126 (1976), which held that it was improper to have a defendant wear jail attire in front of the jury. Obviously, no such act is alleged to have occurred in this case and defendant is therefore seeking an extension of the rule from Estelle. Such an extension is not justified, as the rule from Estelle seeks to prevent a defendant from having the physical appearance of a criminal while standing before a jury. The fact that defendant was in custody is no more an indication that he is a criminal than the fact that he was charged with a crime. Furthermore, the evidence that there were no further car thefts of a similar manner in Shelby Township was relevant, as it spoke to the identity of the individual responsible for the string of thefts. Its probative value was not outweighed by a likelihood of unfair prejudice as the mere fact that defendant had been in custody was not prejudicial. The fact that defendant was in custody was essentially implied before Detective Hogan's statement, as the parties frequently reference Miranda rights, which only apply to custodial interrogations. Detective Hogan's testimony was therefore properly admitted.

[*People v. Hendrix*, No. 277919, 2008 WL 4604063, at *3-5 (Mich. Ct. App. Oct. 16, 2008).]

## A.   This issue is a non-cognizable claim of state evidentiary law.

The claim that a state trial court violated due process by

admitting other bad acts evidence is not cognizable on habeas review.

Generally, state-court evidentiary rulings cannot rise to the level of due

process violations unless they "offend[] some principle of justice so

rooted in the traditions and conscience of our people as to be ranked as

fundamental."  *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).  The

66

Supreme Court has "defined the category of infractions that violate
'fundamental fairness' very narrowly."  *Dowling v. United States,* 493
U.S. 342, 352 (1990).  *See also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th
Cir. 2003).  This is because "[b]eyond the specific guarantees
enumerated in the Bill of Rights, the Due Process Clause has limited
operation."  *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (quoting *Dowling
v. United States*, 493 U.S. 432, 352 (1990).

Both the Supreme Court and the Sixth Circuit repeatedly have
held that a defendant is not denied a fair trial by the admission of prior
bad acts evidence.  *See Dowling v. United States*, 493 U.S. 342, 352–54
(1990) (holding that the admission of prior bad acts evidence that had
"the potential to prejudice the jury" but was "at least circumstantially
valuable in proving petitioner's guilt" did not violate due process);
*Estelle v. McGuire*, 502 U.S. 62, 67–70 (1991) (holding the admission of
prior injury evidence tending to prove battered child syndrome did not
violate due process); *Coleman v. Mitchell*, 268 F.3d 417, 439–40 (6th
Cir. 2001); *Manning v. Rose*, 507 F.2d 889, 893–95 (6th Cir. 1974).

Although the Supreme Court has found "no question that
propensity would be an 'improper basis' for conviction," *Old Chief v.*

*United States*, 519 U.S. 172, 182 (1997), *Huddleston v. United States*, 485 U.S. 681 (1988), it has declined to hold that similar "others-acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice.  *See Dowling*, 493 U.S. at 352–53 (finding that the presentation of evidence of another robbery for which the defendant previously had been tried and acquitted did not violate fundamental conceptions of justice).  Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. Put more directly, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.  The Sixth Circuit has specifically upheld state convictions against similar habeas challenges involving Mich. R. Evid.  404(b) evidence on the ground that the use of such evidence in those cases was not fundamentally unfair.  *See Burton v. Renico*, 391 F.3d 764, 775–76 (6th Cir. 2004); *Coleman*, 244 F.3d at 542–43.

Moreover, "the danger of prejudice resulting from improper propensity inferences can be reduced significantly by proper curative instructions." *United States v. Chavis*, 296 F.3d 450, 461 (6th Cir.

68

2002).  "[W]e should presume that the jury followed this instruction and did not make an improper propensity inference." *Chavis*, 296 F.3d at 462.  Here the trial court gave the jury limiting instructions regarding the other bad acts evidence.  (Tr. II at 173-174.)

Finally, even if this were a cognizable issue, as the state appellate court noted, there were strong factual similarities between this crime and the three earlier incidents that made them very probative on the question as to Hendrix's identity as the carjacker in this case.  The prior thefts show that Hendrix was an opportunistic car thief who stole cars in the same area as the theft in this case, and always ended up at a crack neighborhood in Detroit.  Therefore, it was entirely appropriate to admit this evidence under Mich. R. E. 404(B), as it showed a common plan or scheme and also a modus operandi establishing identity.

Hendrix is not entitled to habeas relief for this claim.

**VI.   Habeas relief is not warranted on Hendrix's claim that there was insufficient evidence that he was the carjacker who killed Evangeline.  Hendrix was caught red-handed in the stolen van only six hours later.  There was no evidence that anyone else stole the van before him.  And there was a very narrow time window between when the van was stolen and the owner noticed and called the police, leaving a very narrow window for Hendrix's "alternate" scenario of someone else stealing it first and abandoning it for him to steal.  Thus, the state appellate court's conclusion that there was sufficient evidence of guilt was not an unreasonable application of clearly established Supreme Court law.**

Hendrix claims that the evidence was insufficient to establish his guilt because there wasn't enough to establish he was the carjacker who pushed Evangeline onto the road to her death.  But Hendrix  was caught red-handed in the stolen van only six hours later.  At that time, he offered no explanation for how he got the van, other than he did not know how he got it.  He had committed multiple similar thefts in the same area.  There was no evidence that anyone other than perhaps Hendrix's girlfriend had been in the stolen van.  And there was a very narrow time window between when the van was stolen and the owner noticed and called the police, leaving a very narrow window for Hendrix's "alternate" scenario of someone else stealing it first and abandoning it for him to steal.  There was thus ample evidence for the

jury to find that he was the one who originally stole the van.  There was

thus more than sufficient evidence to support his convictions.  Hendrix

is not entitled to relief on this issue.

Hendrix made this claim on direct appeal, but the Michigan Court

of Appeals considered and denied this claim on the merits by applying

the correct constitutional standard in a manner that was not objectively

unreasonable:

> Defendant argues that there was insufficient evidence
> to support the convictions, where no one identified him as
> the perpetrator, the victim's description of the perpetrator
> did not match defendant, there was no video surveillance
> showing that defendant committed the crimes, and where
> the only link between defendant and the crimes was
> circumstantial evidence that he was later found in the car
> six hours after the crimes were committed, which evidence
> was tenuous and insufficient to infer guilt. We disagree.

> We review de novo a claim that the evidence was
> insufficient to sustain a verdict. *People v Lueth*, 253 Mich
> App 670, 680; 660 NW2d 322 (2002). When ascertaining
> whether sufficient evidence was presented at trial to support
> a conviction, this Court must view the evidence in a light
> most favorable to the prosecution and determine whether a
> rational trier of fact could find that the essential elements of
> the crime were proven beyond a reasonable doubt. *People v
> Wolfe*, 440 Mich 508, 515-516; 489 NW2d 748 (1992). This
> Court will not interfere with the trier of fact's role of
> determining the weight of the evidence or the credibility of
> witnesses. Id. at 514-515. Circumstantial evidence and
> reasonable inferences that arise from such evidence can
> constitute satisfactory proof of the elements of the crime.

*People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "'[C]ircumstantial evidence is oftentimes stronger and more satisfactory than direct evidence.'" *Wolfe*, 440 Mich at 526 (citation omitted). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997). "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

    The record reflects that, approximately six hours after the crimes were committed, the police pulled defendant over as he was driving the stolen vehicle. Defendant incredulously told police that he did not know how he came to be in possession of the van. Further, as indicated in our first opinion, there was admissible MRE 404(b) evidence on the issue of identity, showing that defendant had engaged in a recent pattern of stealing vehicles in the area of the instant crimes and that the thefts occurred under similar circumstances, establishing a modus operandi. As previously held, the prior bad acts were sufficiently unique, constituting defendant's signature under *People v Golochowicz*, 413 Mich 298, 319; 319 NW2d 518 (1982). There were no more similar thefts of vehicles following defendant's apprehension, thereby further supporting a conclusion that defendant was the culprit. Additionally, the fingerprints in the van that the police were able to check for a match belonged solely to defendant, and the testimony suggested that items found in the stolen van had been claimed by defendant's girlfriend. Viewing all of this evidence in a light most favorable to the prosecution, resolving any and all evidentiary conflicts in favor of the prosecution, and recognizing that circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the crimes, we hold that the evidence was sufficient to establish that

defendant was indeed the perpetrator. It was up to the jury to determine what inferences could be fairly drawn from the evidence and to determine the weight to be accorded those inferences, and we find no basis in the record to interfere with the jury's role and its verdict.

[*People v. Hendrix (On Remand)*, No. 277919, 210 WL 673294, at *2-3 (Mich. Ct. App. Feb. 25, 2010).]

## A.    The law for sufficiency of evidence claims.

Before turning to the specifics of Hendrix's claim, the State points out, as noted above, that under AEDPA a federal court may grant a writ of habeas relief only if the state courts ruled in a way contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  The applicable rule or standard for reviewing a sufficiency of the evidence claim was set forth by this Court in *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Supreme Court held that in reviewing sufficiency claims, the relevant question is whether—after viewing all of the evidence in the light most favorable to the prosecution—any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319.  The Supreme Court emphasized that it is the trier of fact's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

73

inferences from basic facts to ultimate facts. The Michigan Court of Appeals applied the rule set forth by *Jackson* in this case so the question is whether its application was objectively unreasonable.

The Supreme Court has held that a state court decision is an unreasonable application of clearly established federal law if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. When assessing reasonableness, "a federal habeas court may not grant a writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Williams*, 529 U.S. at 409; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

28 U.S.C. § 2254(d) imposes an enhanced deferential standard for evaluating state court rulings on habeas review and "demands that state court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24. Moreover, a fundamental concept for this collateral review is that habeas relief may not be granted under AEDPA by a federal

habeas court conducting its "own independent inquiry whether the state court was correct as a de novo matter." *Yarborough*, 541 U.S. at 665.

In *Jackson*, the Supreme Court held that critical inquiry on sufficiency claims must determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. The inquiry is not whether the reviewing court itself believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-319 (emphasis in original). Thus, under *Jackson*, a habeas petitioner is entitled to relief on a sufficiency claim "if it is found that upon the record evidence adduced at the trial that no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324.

The Supreme Court emphasized that all of the evidence is to be considered in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319 (emphasis in original). This standard was to be applied regardless of whether the evidence of guilt was direct or circumstantial.

75

Indeed, the Supreme Court has stated that circumstantial evidence is entitled to equal weight as direct evidence, and the prosecution may meet its burden entirely through circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954).

Under *Jackson*, the prosecutor does not have an affirmative duty to rule out every hypothesis except that of guilt. *Jackson*, 443 U.S. at 326. And it is the province of the fact-finder—in Hendrix's case the jury—to weigh the probative value of the evidence and resolve any conflicts in testimony. *Jackson*, 443 U.S. at 318-319. The result is that when "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not appear affirmatively in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. Federal habeas courts reviewing sufficiency claims were cautioned not to reweigh the evidence or re-determine the credibility of witnesses whose demeanor had been observed by the finder of fact. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

76

The scope of review on habeas review of sufficiency claims is decidedly limited and that was true, even before the enactment of AEDPA in 1996.  28 U.S.C. § 2254(d) has created additional limits on a federal habeas court's review.  *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007) (A federal court's review on habeas should be "very deferential to the state courts.")  In reviewing a sufficiency claim, deference is now required at two levels: first, to the jury's verdict as contemplated by Jackson, and second, deference should be given to the state court's consideration of the jury's verdict as dictated by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) ("In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference. . . . ").

And, as noted above, "evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664.  The standard for sufficiency claims constitutes a general rule which requires

the federal courts to allow the state courts more leeway in its

application.  *Thompson v. Bock*, 215 Fed. Appx. 431, 437 (6th Cir. 2007).

## B.  There was sufficient evidence that Hendrix was the original (and only) carjacker.

Hendrix was caught red-handed in the van only six hours after the

robbery.  That alone is enough for a jury to conclude he was the one who

originally stole the van, and therefore, is the one who pushed

Evangeline out of it when he stole it, killing her.  But the evidence goes

beyond that.  Hendrix had a history of making similar thefts in the

area.  The time between when the van was stolen and the theft was

noticed was mere minutes, not much time for a second robber to grab

the van.  And there was no evidence that anyone else had been in the

van besides Hendrix after the theft (other than Hendrix's girlfriend,

and there is no evidence she is a car thief).  There was thus more than

sufficient evidence for the jury to settle on the most obvious choice for

the identity of the carjacker: the man caught red-handed in the van the

next day, Joseph Hendrix.  And therefore the state appellate court's

determination that this was sufficient evidence was not an

unreasonable application of federal law.

Hendrix is not entitled to habeas relief on this claim.

**VII.  To demonstrate ineffective assistance of trial counsel, Hendrix must show that his attorney rendered deficient performance and actual prejudice.  Habeas relief should be denied for his additional claims of ineffective assistance of trial counsel because the state court determination that Hendrix was not denied the effective assistance of trial counsel was not contrary to, nor an unreasonable application of *Strickland*.**

In his motion for relief from judgment, Hendrix made additional claims of ineffective assistance of counsel based on his allegation that his counsel failed to investigate evidence of similar car thefts by other, unknown persons and so failed to present that evidence at trial.  He also claims that his counsel did not object to additional claimed prosecutorial misconduct.  But as the trial court noted, such evidence could have hurt Hendrix more than it could have helped:

> Turning to the substance of defendant's motion, this Court is not persuaded that trial or appellate counsel was ineffective.  To establish ineffective assistance of counsel, a defendant must show that counsel performed deficiently by making "errors so serious that counsel was not performing as 'counsel' guaranteed by the Sixth Amendment." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  However, there is "a strong presumption that counsel's performance constituted sound trial strategy." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).  Defendant must also show "that the deficient performance prejudiced the defense." *Strickland*, *supra* at 687.  That is, "defendant must show the existence of a reasonable probability that, but for counsel's error, the

80

result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Court shall first address defendant's argument that trial and appellate counsels were ineffective for failing to offer evidence of other carjackings in Shelby Township which took place while defendant was in custody. The three prior carjackings in which defendant was implicated – and which were introduced as 404(b) evidence by the prosecution – were quite similar to each other and to the underlying offense. All of these incidents occurred within a mile of defendant's current or former residences, and all occurred when the keys were left in the vehicle and the driver was in an adjacent business. In addition, two of the three prior carjackings bore additional similarities to the underlying offense: the vehicles were left running and they were recovered in close proximity of each other in an area south of the intersection of Van Dyke and Six Mile Road.

On the other hand, the car thefts which occurred in Shelby Township after defendant's arrest bear much less similarity to the underling offense than defendant's own prior bad acts. Under these circumstances, the introduction of evidence concerning the subsequent car thefts might have inadvertently served to emphasize the similarities between defendant's own prior bad acts and the charged offenses. In other words, the introduction of evidence concerning the post-arrest incidents could have been detrimental to defendant's case. Accordingly, it does not follow that trial or appellate counsels were ineffective for failing to offer evidence of the incidents.

Furthermore, the fact that other carjackings occurred in Shelby Township fowling defendant's arrest does not abrogate the overwhelming evidence that defendant perpetrated the carjacking for which he was convicted. Therefore, even if trial and appellate counsel erred in failing

81

> to offer evidence of these other incidents, defendant has
> failed to show that he suffered actual prejudice as a result.
>
> The Court now turns to defendant's second argument:
> that trial and appellate counsels were ineffective for failing
> to object to numerous instances of prosecutorial misconduct.
> This general issue has already been decided against
> defendant on appeal.  To wit, the Court of Appeals found
> that the prosecutor did not "den[y] him a fair trial by
> misusing and misstating [his] statements to police."  The
> Court of Appeals also disagreed with defendant's contention
> "that it was improper to introduce testimony that he
> remained in custody after his arrest."  As such, defendant's
> principal claims of prosecutorial misconduct have already
> been found meritless.  Trial and appellate counsels were
> clearly not ineffective for failing to object where no objection
> was warranted.
>
> [7/13/2012 Macomb Cir. Ct. Order at 3-5.]

Counsel was thus not ineffective for not introducing it.  And in any case,

as was also noted above, the evidence of guilt was overwhelming.

Hendrix was caught red-handed in the stolen vehicle.  He is not entitled

to relief for this claim.

**VIII. To demonstrate ineffective assistance of appellate counsel, Hendrix must show that his attorney rendered deficient performance and actual prejudice. Hendrix should be denied habeas relief of a new direct appeal because the state trial courts determination that Hendrix was not denied the effective assistance of appellate counsel was not contrary to, or an unreasonable application of *Strickland*.**

Hendrix claims that his appellate counsel was ineffective because counsel did not raise on direct appeal his claims in his motion for relief from judgment. As those claims are without merit, Hendrix's appellate counsel was not ineffective for failing to raise those meritless issues. Hendrix is not entitled to habeas relief on this issue.

Hendrix raised this issue in his motion for relief from judgment. The trial court rejected this claim on the merits in a manner that was not objectively unreasonable. (See Issue VII above).

**A.    Law Regarding Ineffective Assistance of Appellate Counsel Claims.**

The Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions. *McKane v. Durston*, 153 U.S. 684, 687, 38 L. Ed. 867, 14 S. Ct. 913 (1894). But, if a state provides for appeals from convictions, States must appoint counsel to

83

represent indigent defendants. *Douglas v. California*, 372 U.S. 353, 357, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963). Michigan provides for appeals from felony convictions whether by trial or plea. Mich. Const. art 1 section 20. *See also Halbert v. Michigan*, 545 U.S. 605, 610, 125 S. Ct. 2582, 162 L. Ed. 2d 552 (2005) "[T]he Due Process and Equal Protection Clauses require the appointment of counsel for [indigent] defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." Under the Sixth and Fourteenth Amendments, a state criminal defendant has a right to the effective assistance of appellate counsel on his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985) (although criminal defendants do not have a constitutional right to appeal, they have a due-process right to the effective assistance of appellate counsel if the state provides an appeal).

As with an ineffective assistance of trial counsel claim, an ineffective assistance of appellate counsel claim requires a petitioner to show that counsel's performance was deficient, and that the deficient performance was prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also, Smith v.*

84

*Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000)

(applying *Strickland* framework to appellate counsel claim); *Smith v.*

*Murray*, 477 U.S. 527, 535-36, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986)

(same).  To establish ineffective assistance of appellate counsel, a

defendant "must first show that his counsel was objectively

unreasonable." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Petitioner

also must establish that he suffered prejudice as a result of his

attorney's allegedly deficient performance. *Mahdi v. Bagley*, 522 F.3d

631, 636 (6th Cir. 2008).  To prevail on a claim that appellate counsel

was ineffective, a defendant must establish two elements: that "counsel

unreasonably failed to discover nonfrivolous issues," and the existence

of "a reasonably probability that, but for his counsel's unreasonable

failure" to argue the issue "he would have prevailed on his appeal."

*Robbins*, 528 U.S. at 285.

As applied to appellate counsel, that standard is difficult to meet

because, to be effective, "appellate counsel . . . need not (and should not)

raise every non frivolous claim, but rather may select among them in

order to maximize the likelihood of success on appeal." *Robbins*, 528

U.S. at 288.  Even if a defendant succeeds in making that showing, he

must still "show a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285.  Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Relief is not available when there is no reasonable probability that, absent appellate counsel's performance, Petitioner "would have prevailed on his appeal." *Robbins*, 528 U.S. at 285.

Appellate counsel has no constitutional duty to present every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983). *See also Engle v. Isaac*, 456 U.S. 107, 133-34, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982) ("We have long recognized ... that the Constitution guarantees criminal defendants only a fair trial and a competent attorney.  It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.").  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Appellate counsel may, however, deliver deficient performance and prejudice a defendant by omitting a

86

"dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003), aff'd 104 Fed. Appx. 461 (6th Cir. 2004). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001). The Supreme Court has rejected the claim that counsel is ineffective simply because he or she did not take an action when "there was nothing to lose by pursuing it". *Knowles v. Mirzayance*, 556 U.S. at 121-122.

Appellate counsel can rarely be faulted for failing to appeal a claim that was never raised or preserved in the trial court. When a Michigan defendant raises an unpreserved issue for the first time on appeal, the issue will only be reviewed for plain error. *People v. Carines*, 460 Mich. 750, 597 N.W.2d 130, 138 (Mich. 1999). Under that rigorous standard, "reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial

proceedings, independent of defendant's innocence." *People v. Blackston*, 481 Mich. 451, 751 N.W.2d 408, 412 n.12 (2008) (citing *Carines*, 597 N.W.2d at 138).  Hence, had Petitioner's appellate counsel chosen to raise an unpreserved issue on appeal, he would have been faced with the formidable plain error standard.  Given this narrow standard of review, it is difficult to prove ineffective assistance based upon appellate counsel's failure to raise an issue that, if raised, would have been subject to plain error review.  The decision by appellate counsel not to raise a claim subject to plain error review is usually the result of a reasonable winnowing of weaker appellate claims.  *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) ("The decision to forgo a plain error claim is usually the result of a reasonable winnowing of weaker appellate claims," and thus, rarely leads to the conclusion of ineffective assistance.); *Roberts v. Delo*, 205 F.3d 349, 352 (8th Cir. 2000).  Therefore, courts rarely conclude that an appellate attorney's performance was constitutionally deficient for not raising a claim subject to plain error review.  *Williams v. Kemna*, 311 F.3d 895, 897-898 (8th Cir. 2002).  Appellate counsel reasonably decided not to raise unpreserved issues because it is known review will only be for plain

88

error - a very difficult standard to meet.  Thus, failure to raise claims subject to plain error review usually is an exercise of sound appellate strategy.

The question before the Court, therefore, is not whether Hendrix's appellate counsel was ineffective, but rather whether the state court's holding that Hendrix's appellate counsel was not constitutionally ineffective was contrary to or an unreasonable application of *Strickland*. *See Richter*, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624(2011).  In the context of claims premised on counsel's failure to raise certain issues on appeal, the question is whether the state courts had any "reasonable basis" for concluding Hendrix would not have prevailed if his counsel had raised these issues on appeal.  *Goff v. Bagley*, 601 F.3d 445, 462 (6th Cir. 2010).

Finally, it is also important to note that in a case based on ineffective assistance of appellate counsel, a prevailing habeas petitioner is entitled to a new appeal rather than a new trial.  *Grady v. Artuz*, 931 F. Supp. 1048, 1073 (S.D.N.Y. 1996) ("In a case based on ineffective assistance of appellate counsel, the petitioner is entitled to a new appeal rather than a new trial.").  The appropriate remedy is to

89

grant such a petitioner "an opportunity to pursue his direct appeal with

effective assistance of counsel." *Mapes v. Tate*, 388 F.3d 187, 195 (6th

Cir. 2004); *Hardaway v. Robinson*, 655 F.3d 445 (6th Cir. 2011).  Such a

narrow remedy "neutralizes" the constitutional violation.  *See Freels v.*

*Hills*, 843 F.2d 958, 964 (6th Cir. 1988).


### B.    Hendrix's appellate counsel was not ineffective.

Hendrix's claims in his motion for relief from judgment are

meritless.  Therefore, Hendrix's appellate counsel was not ineffective for

not raising them.  "[A]ppellate counsel cannot be found to be ineffective

for 'failure to raise an issue that lacks merit.'"  *Shaneberger v. Jones*,

615 F. 3d 448, 452 (6th Cir. 2010); cert. den. 131 S. Ct. 1013 (2011)

(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.2001)).  Hendrix

has failed to show that appellate counsel's performance fell outside the

wide range of professionally competent assistance by omitting his

additional claims.  Appellate counsel presented issues on direct appeal.

Hendrix has not shown that appellate counsel's strategy in presenting

those other issues and not raising the claims Hendrix wanted to assert

was deficient or unreasonable.  Relief is not available when there is no

90

reasonable probability that, absent appellate counsel's performance, Hendrix "would have prevailed on his appeal." *Robbins*, 528 U.S. at 285.

## IX.   Hendrix's remaining claim of prosecutorial misconduct also does not merit relief.

Hendrix's remaining claim is one of further instances of alleged prosecutorial misconduct.  But as the state court noted in its consideration of his motion for relief from judgment, these claims are minor and, ultimately, non-prejudicial because of the overwhelming evidence of Hendrix's guilt:

> Defendant also raises several other instances of alleged "prosecutorial misconduct" which were not separately addressed on appeal.  Specifically, he points to several statements by the prosecutor concerning defendant's lack of alibi witnesses, and to a statement by the prosecutor that defendant is capable of violence.  However, even if these statements constituted misconduct, the misconduct was isolated and likely unintentional, whereas the evidence against defendant was strong.  See, e.g., *People v Bahoda*, 448 Mich 261, 292-293, n 64; 531 NW2d 659 (1995).  The cumulative effect of these statements was minor, and trial and appellate counsels' failure to object to these instances of alleged misconduct did not render their assistance ineffective.  Additionally, defendant has failed to demonstrate any likelihood of actual prejudice stemming from these minor instances of alleged misconduct.  For all of these reasons, defendant's motion for relief from judgment is properly denied.

[7/13/2012 Macomb Cir. Ct. Order at 5.]

Hendrix is not entitled to relief for this time-barred claim.

### Conclusion

Hendrix's claims VI, VII, and VIII (labeled VII, VIII, and IX above) are barred by the applicable statute of limitations as detailed above.

Hendrix procedurally defaulted claims I and II (labeled II and III above). He has not shown cause and prejudice to excuse the default. In addition, he has not shown failure to review the claims would result in a fundamental miscarriage of justice. Accordingly, as detailed above, habeas review of Hendrix's claims I and II should be barred.

The state courts' rejection of Hendrix's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Hendrix was "entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619 (1953); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial."). The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. The formidable threshold

93

for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough*, 541 U.S. at 664. In other words, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011). Here, there was no "extreme malfunction." *Richter*, 131 S. Ct. at 786. Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. And the State asserts that Hendrix is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The State also contends that Hendrix has not demonstrated entitlement to discovery. "Habeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for

good cause." R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a). "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)). Habeas Rule 6(a). "Conclusory allegations are not enough to warrant discovery under Rule 6, rather, a petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974. Hendrix has not met this burden.

If this Court denies the petition, the State asserts that Hendrix is also not entitled to a certificate of appealability (COA) so as to proceed further. In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the

95

petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483-84. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable

96

whether the district court was correct in its procedural ruling. *Id.* at 484.

When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

"The issuance of a COA must not be pro forma or a matter of course," and a habeas petitioner who seeks the issuance of a COA must show more than the absence of frivolity or the presence of good faith on his or her part in order to obtain a COA. *Miller-El*, 537 U.S. at 337-38. Finally, a habeas petitioner's conclusory assertion that jurists of reason would find his or her claims to be debatable is insufficient to warrant the issuance of a COA. *See Bagby v. Saffle*, 53 F. App'x 25, 28 (10th Cir. 2002) (stating that the petitioner's "mere conclusory assertions to the contrary" are not enough to satisfy the burden).

## Relief

For the reasons stated above, this Court should deny the petition. The Court should also deny Hendrix any requested discovery, evidentiary hearings, bond, oral argument, and any other relief he seeks in this action, including a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/David Goodkin

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
goodkin@michigan.gov
[P69338]

Dated: October 30, 2014

AG #2012-0004802A/Hendrix, Joseph/Answer.doc

98

## Certificate of Service

I hereby certify that on October 30, 2014, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE AVERN COHN
MAGISTARTE JUDGE MONA K. MAJZOUB
MICHGAL B. SKINNER, ATTORNEY FOR PETITIONER

Respectfully submitted,

Bill Schuette
Attorney General

s/David Goodkin

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
goodkind@michigan.gov
[P69338]