2:11-cv-14659-AC-MKM Doc # 13-16 Filed 08/30/13 Pg 1 of 62 Pg ID 530



# STATE OF MICHIGAN
# COURT OF APPEALS

People of the State of Michigan,
    *Plaintiff-Appellee*,

v

JOSEPH HENDRIX,
    *Defendant-Appellant*.

COA No. 277919

Macomb County Case No. 2007-000056-FC

| | |
|---|---|
| Mary Jo Diegel (P35617) | Michael Skinner (P62564) |
| Macomb County Prosecutor | Law Offices of Michael B. Skinner |
| 1 South Main Street, Fl 3 | 27 East Flint Street |
| Mount Clemens, Michigan 48043 | Lake Orion, MI 48362-3222 |
| (586) 469-7291 | (248) 693-4100 |
| *Attorney for Plaintiff-Appellee* | *Attorney for Defendant-Appellant* |

## MOTION TO REMAND

  Defendant-Appellant, Joseph Hendrix, was convicted by a jury in the Macomb County Circuit Court, the Honorable Matthew Switalski presiding, of felony murder, carjacking, and UDAA. The trial court sentenced Mr. Hendrix to a mandatory non-parolable life term on April 19, 2007.

  This case arose from the death of Evangeline Doen, after the car that she was a passenger in was stolen from the parking lot of a strip mall. Gina Doen, Evangeline's daughter, drove Evangeline in a minivan to the local dry cleaners, and she left Evangeline in the car while she ran in to drop off some clothes for cleaning. When Gina came out, the minivan was gone, and Evangeline was lying in the middle of the parking lot with a head injury. There was no video surveillance of the area. There were no witnesses. Evangeline herself identified the perpetrator as a tall, blonde man with glasses – a description that did not match Mr. Hendrix. However, because Mr. Hendrix was arrested

1

six hours later alone in the minivan, he was the prime suspect. Because Mr. Hendrix was arrested in a crack dealing area of Detroit, the prosecution's theory was that Mr. Hendrix stole the car in order to get to Detroit to get drugs. Because even the police witnesses testified that stolen cars will often exchange hands multiple times between drug users and drug dealers within hours of being stolen, the prosecution introduced 404(b) evidence of other car thefts involving Mr. Hendrix to prove his identity as the car thief in this incident. Unfortunately, ten days after the theft of the minivan, Evangeline Doen died in the hospital.

Mr. Hendrix is seeking to remand from this Court to consider whether his trial attorney was ineffective for failure to move to suppress statements that he made to the police during a custodial interrogation after he had invoked his right to counsel. Shelby Township Detective Hogan testified, in brief, that Mr. Hendrix did not explain his whereabouts for the period of time during the incident while he was being interrogated. The prosecution used this fact to argue extensively during closing argument that Mr. Hendrix had the opportunity to provide an alibi in defense against the charge but failed to do so.

As an offer of proof, Mr. Hendrix submits with this brief the police report of Detective Terrance Hogan dated September 6, 2006, in which Detective Hogan states:

> At approx 7:30 a.m. I escorted Hendrix from the Shelby Twp cell block to the interview room. I advised Hendrix of his rights off the Shelby Twp advise [sic] of rights forms. Hendrix refused to speak with me until he had the opportunity to speak with an attorney. I returned Hendrix to the cell block without any further questioning.

*See* Exhibit A. In addition, the advice of rights form from that same interview indicates that Mr. Hendrix requested an attorney. *See* Exhibit B.

Nevertheless, at trial, the prosecution introduced a separate advice of rights form from two

days later indicating that Mr. Hendrix had been advised of his rights but refused to acknowledge them. *See* Exhibit C. Detective Hogan then testified about Mr. Hendrix's alleged statements to him during this in-custody (at the Macomb County Jail) interrogation, despite the fact that Mr. Hendrix had requested counsel two days earlier. In his supplemental police report, Detective Hogan states that he apparently ignored Mr. Hendrix's request for counsel in initiating this September 8th interrogation: "On 9/8/06 myself and D/Sgt. Muszynski again tried to interview suspect Joseph Hendrix." *See* Exhibit D.

And the prosecution battered Mr. Hendrix with his statement (or lack thereof) in closing argument. For example, the prosecution stated:

> What's more important now is Detective Hogan's interview with him on September 8 at the Macomb County Jail. Detective Hogan says a woman was badly injured, pushed out of that minivan and she might die, and this is your opportunity to tell what happened. In other words, maybe not verbalize precisely as follows goes like this :
>
> Tell me where you were, give me an alibi, who were you with, and how did you obtain the vehicle? Because if you can give me that information, then I can investigate it, and I can clear you. There's no question to fourteen of you that if Defendant had an alibi for his whereabouts say between 6:00 p.m., 7:30 p.m., he wouldn't have been charged. The alibi would have been investigated, and if true, he wouldn't be charged with this carjacking. Where was he? Ask yourselves where was he? We're not asking where he was from 3:00 a.m. to 5:00 a.m., where he might have been sleeping alone where nobody knows. Everybody knows where he was and where she was two days earlier, or three days earlier, during the evening, everybody knows that. Now, he's in the County Jail, knows he's been arrested for a crime in connection with this car theft, carjacking, yet, and he's had time to think about it too, and here comes Terry Hogan. Now, the defense, not Mr. Sheikh, he's a great guy, but the Defendant might be thinking well, Hogan is my enemy, Hogan just wants to frame me. But, Hogan wants to find out who did this. This is a serious case where a woman might die. And she did die. Hogan wants to know who did it. The Defendant has the alibi, and the alibi

can be verified. Alibis easily can be verified. For example, what if Defendant were at home and engaged in a long telephone call: The telephone bills would support that, that he was on the phone from say six to eight p.m., or if he went to a restaurant, saw him use a credit card, that could be verified. If he's at a friend's house, a relative's house, that all could be verified. The point is if he had an alibi, he would have told Detective Hogan. But, there is no alibi. And you know why there's no alibi? Because there is no alibi. He has none. He has none. There is no doubt in this world that if had an explanation for where he was at that time, on that day, we would know it. He would have told Sergeant. Ferguson, and if not Sgergeant Ferguson, he would have told Detective Hogan. When he can't tell he where he is, what does that mean? Because he wasn't anywhere other than Vineyard's paring lot at around 6:50 p.m. Committing his thefts by his unique modus operandi. . . . He's not some 16 - year - old kid, somebody facing his first trouble with the law. He's been around. He knows the drill. And he has heard from Detective Hogan that the woman might die. Now, ask yourselves, would anybody with any intelligence know that he's about to face a very serious charge, carjacking, and felony murder if the woman dies. If your not the person who took the car at Vineyards, your going to be clambering, be wailing. Detective, let me tell you what happened. This is how I got the car, Detective. I didn't want to say anything before, but here's how it happened. Never. Not one word. He says, oh, I don't want to say anymore, because it will get me into trouble. He tells Sergeant Ferguson, I don't know how I got the minivan. He knows, he's the thief.

T 3/21/07 p. 141-44.

> They [the police] did what they could, and finally the Defendant had an opportunity to tell us what happened on September 6 and September 8, and he didn't. His silence is defining, his silence speaks a thousand words. His silence in refusing to say from where he made the call, how he obtained the vehicle, and who he was with during the important times. That's like a thunderbolt from the sky. In other words, he's saying, I did it. Because if I didn't do it, I'll tell you why. And by the way here we are, six months and 16 days since the incident. And have you been presented with an alibi witness for the Defendant? No. Not one. Not one who can say he or she was with the Defendant, 5:00, 6:00, 7:00, 8:00. Not one. And what does that tell you? It tells you nobody was with him. You know, his mother was willing to lie for him on December 3 of 2002 when Officer

4

> Gammicchia arrived at the door. He said, hey, where's Joseph Hendrix (indicating)? He's not here. She's not willing to lie under oath.

T 3/21/07 p. 165-66.

The trial court, to its credit, made an effort to *sua sponte* correct the prosecutor's misconduct in using Mr. Hendrix's silence against him by informing the jury directly following the prosecutor's rebuttal that the jury could not draw any adverse inference from the fact that Mr. Hendrix chose not to testify at trial; however, the trial court specifically drew a distinction between Mr. Hendrix's silence in court and his silence while in custody, instructing the jury that it could draw an adverse inference from his in-custody silence. T 3/21/07 p. 166. Because Mr. Hendrix had invoked his right to counsel and his right to silence, this was improper and the jury should not have been allowed to hear of Mr. Hendrix's alleged statement, let alone draw an adverse inference from it.

In addition to the September 8th statement, the September 6th statement is also in question. While that statement was not as significant, there was testimony that the police asked Mr. Hendrix where he got the stolen car and he said that he didn't know. However, the prosecution's theory was that Mr. Hendrix stole the car to go to Detroit to get drugs, and the police testified that Mr. Hendrix was apprehended in the car at 1:30 in the morning in a crack area of Detroit. This raises the question of Mr. Hendrix's state of mind at the time that he allegedly waived his *Miranda* rights and made this September 6th statement. If he was under the influence of narcotics, his waiver could be invalid, thus rendering his statement inadmissible. In *People v Cheatham*, 453 Mich 1, 27 (1996), the Court reaffirmed that "[t]he burden is on the state to prove by a preponderance of the evidence that the suspect properly waived his rights." In addition, proof of a waiver requires "evidence sufficient to demonstrate that the accused understood that he did not have to speak, that he had the right to the

presence of counsel, and that the state could use what he said in a later trial against him." *Id*, p 29. In *People v Cipriano*, 431 Mich 315 (1988), the Court identified intoxication as a factor in determining whether a *Miranda* waiver is valid. *Id.* at 334.

Mr. Hendrix's trial attorney did not move to suppress these statements or object when the statements were introduced or when the prosecution made improper use of the statements. These failures deprived Mr. Hendrix of his constitutional right to the effective assistance of an attorney. *Strickland v Washington*, 466 US 668 (1984). Mr. Hendrix prays that this Court remand for an evidentiary hearing so that he can develop a record regarding his alleged statements to the police and the ineffective assistance of his attorney. *People v Ginther*, 390 Mich 436 (1973).

Respectfully submitted,

_____
Michael Skinner (P62564)
Law Offices of Michael Skinner
27 E. Flint Street
Lake Orion, MI 48362
(248) 693-4100
*Attorney for Defendant-Appellant*

DATED: March 26, 2008

6