UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

JOSEPH HENDRIX,

    Petitioner,                                                    Case No. 11-14659

                                                                            Hon. Avern Cohn

-vs-

CARMEN PALMER, Warden of the Michigan Reformatory,

    Respondent.

REPLY BRIEF IN SUPPORT OF AMENDED PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

Introduction

    Ms. Doen is an indisputable victim, and the criminal justice system does not work if it does not find justice for her.

    But ours, thank God, is a nation of laws, still. For nine years undersigned counsel has represented Mr. Hendrix, first as appointed counsel, now as retained (after a fashion). Until the Friday before oral argument was scheduled before this

1

Court, neither the Government nor any court had provided Mr. Hendrix a genuine opportunity to prove that his *Miranda* rights had been violated nor given the claim any credence at all. In fact, half of the pleadings in the Michigan Court of Appeals in this case concerned petty bickering about proofs of service between the attorneys (undersigned counsel included) and the other half were, in counsel's opinion, the purest form of misdirection from the local prosecutor.

The point? Only that now, after Mr. Hendrix has served almost a decade in prison and after his *Miranda* claim (and other claims that he believes have merit) have been fought over and then rejected, does the Government *concede* that the September 8th statement was erroneously admitted.

Now.

Not in its first brief in this matter, but now, after Mr. Hendrix reached the habeas stage and even after *that*, only when oral argument was ordered.

Mr. Hendrix's burden is higher now that he is at the habeas stage, through no fault of his own; he has diligently pursued this claim to the best of his ability. It will mean nothing that the Government fought this issue until Mr. Hendrix's burden increased and then conceded the point.

Mr. Hendrix asks only that he be heard according to the law.

<u>Regarding Whether the "Merits" Decision Is the Remand Order or the Panel Decision, Either Way, the Michigan Courts Botched this Case from Start to Finish.</u>

The Government argues that Mr. Hendrix has erroneously identified the Michigan Court of Appeals Opinion as the decision on the merits. *People v. Hendrix*, No. 277919, 2008 WL 4604063 (Mich. Ct. App. Oct. 16, 2008), R. 13-10, Pg ID 790-91. The real decision on the merits, according to the Government, is the Michigan Court of Appeals order denying a remand for a *Ginther* hearing. 05/22/08 Order, R. 13-10, Pg ID 602.[1] The Government cites several cases for the proposition that "[a]

---

[1] Using these principles, Mr. Hendrix is not sure why the Michigan Supreme Court order of December 3, 2009 denying leave to appeal on the issue in question is not the last decision on the merits. It uses similarly summary language, had the same police reports attached, and did not make any statement about striking or not relying on the police reports:

> By order of March 23, 2009, the application for leave to appeal the October 16, 2008 judgment of the Court of Appeals was held in abeyance pending the decisions in *People v Borgne* (Docket No. 134967) and *People v Shafier* (Docket No. 135435). On order of the Court, the cases having been decided on July 1, 2009, 483 Mich 178 (2009) and 483 Mich 205 (2009), the application is again considered. Pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration of the issue raised by the defendant but not addressed by that court during its initial review of this case, specifically, whether the prosecutor presented sufficient evidence of the defendant's identity as the person who stole the van and pushed the victim from the van during the theft. In all other respects, leave to appeal is DENIED because we are not persuaded that the remaining questions presented should be reviewed by this Court.
>
> We do not retain jurisdiction.

Ultimately, Mr. Hendrix is agnostic on the question, but thought it worth pointing out in a cross-all-your-t's sort-of-way.

3

Michigan state court's summary denial of a motion to remand is presumed to be a decision on the merits." Supplemental Answer, p. 37.

Mr. Hendrix acknowledges the Government's case law authority, but objects to it and its reasoning for the record. It is, in a word, loopy. More technically, it is without foundation in any paradigm of statutory, linguistic, or general theory of case law construction. When a court states that a motion to remand is denied "for failure to persuade the Court of the necessity of a remand *at this time,*" the "at this time" portion of the statement is mere surplusage if the court were truly making a decision on the merits of the evidence and arguments before it. If it were doing *that*, it would simply say that the remand is denied for failure to persuade the Court of the necessity of a remand, or some other more definitive statement. In fact, the orders that the federal courts have deemed purported decisions on the merits are no such thing under Michigan state law. As one example: "Because the previous denial of defendant's motion expressed no opinion on the merits, the law of the case doctrine does not affect this Court's review of this issue." *People v Hall*, No. 251050, 2004 WL 2997556, at *3, n. 1 (Mich Ct App December 28, 2004) (the remand order used the same "at this time" language).

In sum, the Sixth Circuit is wrong. The Michigan state courts do not interpret the remand orders as merits decisions, and the language of the orders requires that they be interpreted as interim, non-merits decisions.

4

The reason that the Government wants the remand order to be the merits decision is because of the holding of *Harrington v Richter,* 562 US 86 (2011). *Harrington* holds that in a summary denial situation, like the Michigan Court of Appeals remand denial that the Government is arguing is the merits decision, the habeas court is not restricted to a subset of reasons for the denial of a petitioner's claim as it would be if it were reviewing a full appellate decision. Instead, in a summary denial, the habeas court is free to roam about and let its mind wander, imagining this and thus: why might this state court or any hypothetical state court have denied this claim? Like Pangloss, the habeas court believes that "we live in the best of all possible worlds" – the best possible world in these circumstances, from the Government's perspective, is one in which Mr. Hendrix remains in prison for whatever reason anyone can imagine. As *Harrington* states:

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

*Harrington*, 562 US at 98. In other words, *Harrington* puts the burden on the petitioner to find no reasonable basis for the decision.

Hence, the Government's desire to not restrict this Court to the Michigan Court of Appeals Opinion but rather open the case up to a world of possibilities and place the burden on Mr. Hendrix to disprove them all.

Now we get to the nub of the situation. What unwritten reasons could the Michigan Court of Appeals have had for denying Mr. Hendrix's claim on the merits

5

in its one-line remand order? The Government takes this Court through Mr. Hendrix's statements step-by-step on pages 40-44. The Government repeatedly refers to the police reports attached to Mr. Hendrix's Motion to Remand as "non-record" evidence, which is understandable, but muddies the waters a bit when the Government is arguing that these very documents were reviewed by the Michigan Court of Appeals in making its "merits" decision; they were not struck from the record or ignored by the Court of Appeals, but rather, by the Government's own argument, directly examined in reaching its conclusion.

In any event, the Government's detailed review seemed to be going somewhere positive from the Government's perspective, yet, in the end, the Government simply concedes that the September 8th statements were inadmissible and it was error to admit them at trial. *See* Supplemental Answer, pp. 45-46. The Government tries to soften the blow by "speculating" that Det. Hogan was not acting maliciously, but does not try to argue that this speculative lack of malicious intent has any legal import.

At this stage, then, by page 45 of the Government's Supplemental Answer, we have a tentative truce that (1) the Michigan Court of Appeals order on remand is the last decision on the merits in the case (subject to Mr. Hendrix's objection and suggestion that perhaps the better order to use, technically, is the Michigan Supreme Court's denial of leave); (2) An agreement that the evidence concerning the September 8th statement was inadmissible (and, presumably, so were any references to it, such as the prosecution's extended references in closing argument).

<u>The Only Part That Matters: Harmless Error</u>

While the Government had to spend some time setting up its argument (in the first 46 pages), the only part that really matters is the last ten pages, in which the Government argues that the September 8th statement was not inculpatory and, ultimately, any error was harmless.

Mr. Hendrix recognizes and accepts that, not to put too fine a point on it, the habeas standard is different and more demanding than a direct appeal. He will not repeat the law he cited in his brief nor quibble with the law cited by the Government. Because, in the end, Mr. Hendrix believes that the standard matters, but this Court knows the standard, and the case turns on the facts and where the Government's analysis goes awry.

The Government claims that the September 8th statement was not inculpatory, yet its very first bullet point of untainted evidence against Mr. Hendrix states that "Hendrix told the police [during the September 6th statement] that he did not know how he came into possession of the Caravan, a statement so incredulous that it incriminated him." This is a surprising statement because Mr. Hendrix made the same claim in the September 8th statement; so according to the Government, when he made this statement on September 6th, it was "so incredulous that it incriminated him," but on September 8th it was not inculpatory.

The Government did also characterize at one point the September 8th statement as "*largely* cumulative", which is false. Supplemental Answer, p. 17 (see

7

also, p. 54). This cumulative nature might refer to Mr. Hendrix's repetition of the "incredulous" and "incriminating" statement that he did not know how he came into possession of the Caravan.

But in the September 8th statement he added an entire realm of content: the allegedly false alibi. This alibi was the exclusive province of the September 8th statement. R.13-5, Pg ID 332. And the prosecutor relentlessly pursued it in closing. R. 13-5, Pgh ID 383-87. This Court did not ask for additional briefing on this issue, but it is a separate issue in this habeas petition that the prosecution misused this statement, characterizing it as a false alibi to Mr. Hendrix's detriment. The Government is wrong when it characterizes the September 8th statement as not inculpatory or cumulative. It contains an entirely separate and prejudicial subject area.

And yes, it is unreasonable to interpret the facts of the case according to this characterization.

Because Mr. Hendrix did not end his September 8th statement there. In addition to the conceded error of violating his request for a lawyer, during the September 8th statement, Mr. Hendrix stated, and the jury was told, that he ended his September 8th statement by saying that he didn't think he was going to say anymore because he didn't want to get into anymore trouble. R. 13-5, Pg ID. 359. This testimony had to be nearly pulled word-by-word from the Detective because the prosecutor could not get him to provide the testimony he was seeking at first; it

8

was a conscious decision on the part of the prosecutor to get this statement from Mr. Hendrix into evidence. This *inculpatory* statement that speaking more would expose Mr. Hendrix to additional trouble.

Again, it is *not* a reasonable interpretation of the facts that such a statement is "not inculpatory" nor that it is cumulative because it has no equivalent in the September 6th statement, which the Government identifies (through the words of the Michigan Court of Appeals) as "minimal comments". Supplemental Answer, p. 11.

If it is not reasonable to interpret the September 8th statements as "not inculpatory" and cumulative, are they nevertheless still harmless error? The Government argues and provides a convenient bullet point list of the reasons so we can follow along, *seriatim*:

1) Hendrix was in possession of the stolen Caravan from which Evangeline Doen was roughly ejected from some six hours after it was stolen in an area of Detroit known for drug dealing and drug houses. As he was being transported from Detroit to Shelby Township during the very early morning hours of September 6, 2006, Hendrix told the police that he did not know how he came into possession of the Caravan, a statement so incredulous that it incriminated him.

   a) In response: As the Government states in its own Supplemental Answer: "On cross-examination, Officer Bryent admitted that, with crack addicts, stolen vehicles often change hands a couple of times prior to being recovered. In other words, he would not find it unusual 'that if person A stole the vehicle, you might recover it with person B . . . .' (3/20/07 Tr., R. 19-1, Pg ID 1394.)" Supplemental Answer, p. 13, n. 5.

9

As this Court will see, the Government has only two pieces of evidence other than Mr. Hendrix's statement: his bare possession of the car and the other acts evidence. It can link Mr. Hendrix to the car, but there the trail goes cold. There is no physical or testimonial evidence, no direct or circumstantial evidence that ties Mr. Hendrix to the criminal act against Ms. Doen. Possession of the car is not enough.

2) Hendrix's fingerprints/palm print were found both inside and outside the Caravan.

    a) In response: What is this except sophistry? A way to bulk up the brief, to bulk up the "evidence" by splitting up the *same piece* of evidence (possession of the car) into multiple discrete pieces with no discernable difference in evidentiary value. Anyone found possessing a car would be expected to leave finger and palm prints in the car. This adds nothing to the evidence against Mr. Hendrix except an extra bullet point.

3) Before she died, Evangeline Doen described the person who carjacked her as a male with brown/blonde hair. Hendrix was a white male whose hair appeared to be brown/blonde.

    a) In response: First, the Government deliberately leaves out the portion of the identification in which Ms. Doen identifies her attacker as "possibly" having glasses and a brown t-shirt; Mr. Hendrix says "deliberately" because the Government states these facts in its own fact section forty pages earlier. Supplemental Answer, p. 11. It leaves this portion of the description out because it doesn't match Mr. Hendrix and it doesn't match the laser-like precision of "brown/blonde haired white male" which *does* match Mr. Hendrix, along with about 100 million other Americans.

10

4)    A purse that Hendrix's girlfriend later claimed was hers was found inside the Caravan.

    a)    In response: Right. Mr. Hendrix was arrested *in the van*. If the Government now wants to pursue a case against the girlfriend, this might be notable, but when Mr. Hendrix is arrested *in the van*, this piece of evidence is not helpful.

5)    Despite what Mr. Hendrix said above, he is going to condense the last bullet points into one:

Hendrix's modus operendi was to steal vehicles that had the keys left in them and appeared to be left unlocked/unattended. Evidence presented at trial demonstrated that Hendrix had stolen three other vehicles besides the Caravan in this fashion.

All four vehicles, including the Caravan, were stolen in an area approximately a mile away from where Hendrix lived or formerly lived.

All three of the vehicles taken to Detroit (the fourth was recovered very close to where it had been stolen when the police immediately pursued it) were found within a half-mile of each other, in an area known for drug dealing and drug houses.

Three of the four vehicle thefts occurred on August 31, September 3, and September 5, 2006. No similar vehicle thefts occurred in Shelby Township after Hendrix was arrested.

a) In response: While this Court ordered the parties to brief the *Miranda* issue, Mr. Hendrix cannot avoid the issue raised in his state court Motion for Relief from Judgment, in which he proved that the testimony at trial which the Government now restates was false. Whether or not it should be the basis for habeas relief (it should), Mr. Hendrix cannot allow the evidence discovered and presented in his Motion for Relief from Judgment to be

ignored when it proved that the claim that Mr. Hendrix was the sole car thief in the Macomb area to steal cars that had the keys still in the ignition was false, and it was further false that such thefts stopped after Mr. Hendrix's arrest.

Mr. Hendrix directs this Court's attention to pages 39-47 of his last Brief regarding this issue. For this Reply, he will note only the highlights, those most noteworthy auto theft incidents that occurred after Mr. Hendrix's arrest which the Government states in its Supplemental Answer did not happen and the jury was assured did not exist:

1. In #06-0026123, a car was stolen from Linda Lane after the owner left the car running; the car was later recovered by the Detroit Police.

2. In #07-0000956, a car was stolen after the owner had left it running.

3. In #07-0002221, a car was stolen from a residential driveway; the owner routinely kept the car keys in the vehicle.

4. In #07-0002465, a car was stolen after the owner left it running in the parking lot of a Club.

5. In #07-0003772, a car was stolen after keys were left inside the vehicle; this incident happened very close to Mr. Hendrix's residence

The Government also points to the questions the jury asked. The law hates jury mind-reading because it is fraught with so many difficulties and treads in such delicate waters. Perhaps, *contra* the Government, the jury asked questions about the palm prints and other issues because they thought that that evidence was *questionable*, but were very *convinced* by Mr. Hendrix's own statements and their inculpatory nature? Isn't that a better reading of the jury questions, better than the

Kreskin routine that the Government engages in by dropping a list on the table and trying to derive conclusions from question marks?

Finally, the Government tries to make something out of the fact that the Michigan Court of Appeals did not address the statements in its analysis of the sufficiency of the evidence. First, this is false. The Court stated (using the same terminology as the Government and quoted by the Government in its own Supplemental Answer), "Defendant incredulously told police that he did not know how he came to be in possession of the van." Supplemental Answer, p. 55. Second, the only other pieces of evidence were the very pieces addressed above: Mr. Hendrix's presence in the car and the false and deficient 404(b) evidence. Saying the same thing over and over again is one way to argue. It is not the best, but it has the merit of consistency.

The Government now concedes a *Miranda* error. And in a case where the prosecution could prove two things: (1) possession of the car six hours later, and (2) previous theft of cars by the defendant, it was an unreasonable determination of the facts and law to decide that the September 8th statement which included a purported false alibi, unexplained possession of the car, and a statement that he would get into more trouble if he kept talking did not have a prejudicial, determinative effect on the case.

Conclusion

Wherefore, Petitioner prays this Court for an order granting this Petition and issuing the writ, and for such other relief as equity and justice require, including an opportunity to expand the record and an evidentiary hearing. The *Miranda* issue and the evidentiary hearing issue are inextricably linked. Given the Government's concession that there was an error in the admission of the September 8th statement, Mr. Hendrix now asks that this case be decided on the existing record, using the police reports as relied upon as conceded by the Government either in denying the motion to remand in the Michigan Court of Appeals or in denying leave in the Michigan Supreme Court; in the alternative, if this Court cannot decide the case without an expanded factual record, Mr. Hendrix renews his request for the reasons in his last brief.

Respectfully submitted,

s/ Michael Skinner
Michael Skinner (P62564)
Law Offices of Michael Skinner
27 E. Flint Street
Lake Orion, Michigan 48362
(248) 693-4100
mskinner@mskinner.com
Attorney for Petitioner

Dated:      July 20, 2016