UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH HENDRIX,

                    Petitioner,                    Case No. 11-14659

v.                                        HON. AVERN COHN

CARMEN PALMER,

                    Respondent.
_____/

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Joseph Hendrix challenges his state court convictions for felony murder, carjacking, and unlawfully driving away an automobile. He is serving a life sentence.

The amended petition (Doc. 9), filed through counsel, raises a number of claims. Two claims merit habeas relief. Both claims center on whether it was error to admit statements made by Petitioner after he invoked his right to counsel. As will be explained, despite Petitioner's invocation of the right to counsel, he was later questioned by police during which he made statements which were used against him extensively at trial. The use of Petitioner's statements, which went unnoticed by Petitioner's trial counsel and ignored by the Michigan courts, violated Petitioner's Fifth Amendment rights under Miranda v. Arizona 384 U.S. 436, 479 (1966) and Edwards v. Arizona, 451 U.S. 477 (1981) and Petitioner's Sixth Amendment right to the effective

assistance of counsel.  Respondent concedes there was error but say the error was harmless.  The Court disagrees that it was harmless.  Accordingly, the petition will be granted on Petitioner's Fifth and Sixth Amendment claims.  Habeas relief will be denied on the remaining claims.  The reasons follow.

## II.  Background

### A.  Petitioner's Trial

#### 1.  General Details

The charges against Petitioner arose from the death of sixty-five year old Evangeline Doen.  The evidence presented at trial established that in the evening of September 5, 2006, Doen was seated in the front passenger seat of her daughter's minivan which was parked at the Vineyards mall in Shelby Township.  A man climbed into the driver's seat and, while driving away, shoved Doen out of the door.  Doen's head hit the pavement, causing her injuries.  She died ten days later.

Petitioner was arrested about six hours after the minivan was stolen.  He was found sitting alone in the minivan at a gas station located in an area of Detroit where crack cocaine is frequently trafficked.

The prosecutor presented evidence that Petitioner previously stole three other vehicles within a mile of his house and under similar circumstances – where the doors were unlocked and the keys were inside.  Two of the vehicles were recovered within a half a mile of where Petitioner was arrested in the minivan.

A police officer who had experience working undercover in the drug enforcement unit testified that it is common for drug addicts to steal cars from areas close to where they live and then trade them for drugs.

However, several police officers testified that it is also possible for addicts to exchange or drive away abandoned vehicles after they have been stolen from their owners.  This possibility formed Petitioner's defense.  Petitioner argued that he could have obtained the minivan some time after it was stolen, and therefore the prosecutor could not prove beyond a reasonable that Petitioner in fact stole the minivan.

2.  Petitioner's Statements to Police and Use of the Statements at Trial

Shelby Township Sergeant Brad Ferguson testified that he and another officer transported Petitioner to Macomb County from Detroit after his arrest on September 6.  During the trip, Petitioner was read his Miranda rights.  He acknowledged them and responded to questioning.  Doc. 13-5, at 76.  Petitioner then told the officers that he did not know how he got the vehicle and he did not know what to say.  Id. at 76-77.[1]

A few hours later, in the early morning hours of September 6, Shelby Township Detective Terrence Hogan was assigned to interview Petitioner when he arrived at the Macomb County Jail. Hogan began by advising Petitioner of his Miranda rights.  Petitioner invoked his right to counsel.  At that point, Hogan did not question Petitioner.  Petitioner was then taken back to his cell.  See Doc. 19-9, at 13-14.

At trial, there was no testimony that Petitioner had invoked his right to counsel on that date.  The only reference to September 6 in Hogan's testimony appears as follows:

Q: Sir, when you talked to him on September 8th, three days after the incident, did he know that a woman was seriously injured in the incident?

A: Oh, yes.

---

[1]Although Ferguson knew that Doen was in critical condition in the hospital, there was no evidence presented at trial that he or his partner, Sergeant Muszynski, notified Petitioner of this fact during the ride.  Id. at 78-79.

3

Q: How do you know he knew?

A: Because I told him on the 6th.

Q: What did you tell him on the 6th?

A: I told him that, you know, if this woman dies, he wasn't – didn't want to cooperate.  If the woman dies, we have no, I mean, he's the person.  He's not cooperating, and he wouldn't tell us, you know, where he got the car.

Q: Were you fixed on this man in terms of his being the one charged for the carjacking?

A: No.

Q: On September 6th, when you first became involved in this case, what were you trying to determine?

A: One, how he got the car, and who pushed Ms. Doen out of the vehicle.

Doc. 13-5 at p. 90-91.

There was no testimony as to whether Petitioner was given his rights on September 6, much less any testimony that Petitioner invoked his right to counsel on September 6.

Instead, Hogan testified in detail about a interview he had with Petitioner two days later, on September 8, 2006.  Doc. 13-5, at 88.  On this date, Hogan approached Petitioner.  Hogan advised Petitioner of his Miranda rights.  Petitioner refused to sign the advice of right form but agreed to talk to him.  Id., at 89.  Hogan then testified as to the substance of his September 8 questioning of Petitioner.  Hogan testified that he asked Petitioner where he was at the time of the Doen car theft.  Petitioner stated he did not want to tell him.  Id., at 90.  At one point in the conversation, Petitioner stated he was in Sterling Heights and made a phone call from a convenience store.  However, Petitioner refused to tell Hogan anything else about his location or the time he placed

4

the call.  Id. at 90.  Hogan also testified that Petitioner asked him if he was going to be

charged with homicide.  Id. at 91.

Hogan also explained that in his view it was significant that Petitioner refused to

reveal his whereabouts at the time of the car theft in light of being aware of Doen's

condition.  Hogan's testimony went as follows:

> Q: Do you find it noteworthy in any way that he refused to tell you where he was
> on September 5, 2006 At 6:45 p.m. or thereafter?
>
> A: Yes.
>
> Q: Why is it noteworthy?
>
> A: Because I think he's afraid to admit that he's the one that actually pushed Ms.
> Doen out of the vehicle?
>
> Q: But, in a more general sense, if he had an alibi, somebody who could say he
> was with me at a restaurant and there are the receipts, would you expect him to
> tell you that?
>
> A: Yes.  He would want me to know that.
>
> Q: If he had been with his mother, grandmother, would you expect him to tell you
> that?
>
> A: I would expect that.
>
> Q: So, what does it tell you as a detective that he didn't give you any information
> about his whereabouts at the time of the carjacking?
>
> A: He does not want me to know where he was.
> . . .
>
> Q: If he's not the thief, would you expect him to tell you that?
>
> A: Yes.
>
> Q: Why?
>
> A: If he's not the thief, he's not going to want to be charged with a crime of that
> type of nature.

5

Id. at 92-93.

Hogan also testified about the prior car thefts involving unlocked doors and keys left in the vehicles during the period preceding the Doen incident, and he said that there were no such similar crimes occurring since Petitioner was in custody.  Hogan then opined that Petitioner stole the Doen vehicle from the victim because the same person committed all four of the described thefts based on the circumstances involved.

As will be explained below, the prosecutor relied heavily on the September 8 interview in closing argument to convince the jury of Petitioner's guilt.  The jury found Petitioner guilty as charged.

### B.  Petitioner's Direct Appeal

Petitioner filed a direct appeal in the Michigan Court of Appeals.  Retained appellate counsel - the same attorney representing Petitioner in the present case - filed a motion to remand.  The motion sought to expand the record to support Petitioner's claim that his Miranda rights were violated by admission of the September 8 statements to Hogan in light of the fact that Petitioner invoked his right to counsel on September 6, and that his trial counsel was ineffective for failing to move to suppress the statements.

Petitioner supported the motion to remand with the police report authored by Hogan indicating that he attempted to question Petitioner about the offense when he first arrived from Detroit on September 6, 2006 and that Petitioner invoked his right to counsel.  See Doc. 19-9, at 13.[2]  The report states that Hogan ceased questioning

---

[2]The exhibits attached to Petitioner's motion to remand were not included in the copy of the motion filed with the Rule 5 material.  See Doc. 19-5.  However, It is clear from the motion to remand and the prosecutor's response to the motion, which are part of the Rule 5 materials, that the motion to remand contained the same exhibits as Petitioner's

Petitioner and returned him to his cell after he invoked his right to counsel. Id.  The

motion also included the advice of rights form dated September 6, 2006, which indicates

that Petitioner requested counsel.  Id. at 14.  The prosecutor opposed the motion on the

grounds that the second interview was permissible because it was ostensibly started

with respect to other offenses.  The Michigan Court of Appeals denied the motion to

remand "for failure to persuade the Court of necessity of a remand at this time."  Id. at

69.

Petitioner then filed his brief on appeal raising the following claims:

I. The trial court erred by admitting statements allegedly made by Hendrix
when he had, on separate occasions, invoked his right to counsel, to
remain silent, and had made an invalid Miranda waiver.

II. The prosecution committed misconduct by using Hendrix's alleged
statements against him and by misstating the substance of those
statements, thus depriving him of his due process right to a fair trial.

III. Hendrix was denied the effective assistance of his attorney where his
counsel failed to object to the introduction of Hendrix's statements or the
prosecutorial misconduct.

IV. The trial court erred in permitting the introduction of other acts
evidence to prove Hendrix's identity where there was insufficient similarity
between the other acts and the crime in his case, thus violating Hendrix's
due process right to a fair trial.

V. There was insufficient evidence to support Hendrix's convictions.

Petitioner attached the police reports and advice of rights forms used to support

his motion to remand to his appellate brief.  Petitioner sought reversal of his conviction

and alternatively asked for a remand to expand the record in support of his first and

_____

reply brief filed in the Michigan Court of Appeals.  See Doc. 19-9 and Doc. 13-10 at 159-
164.

third claims.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion.  People v. Hendrix, No. 277919, 2008 WL 4604063, at *1 (Mich. Ct. App. Oct. 16, 2008).  In pertinent part, the court of appeals stated that "the submitted documents [relating to his Miranda claim] will not be considered in analyzing this or any other issue on appeal" because they were not admitted at trial.  Id.[3]

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims.  The Michigan Supreme Court remanded to the Michigan Court of Appeals to address Petitioner's sufficiency of the evidence claim. People v. Hendrix, 485 Mich. 1014 (2009) (unpublished table decision).

On remand, the Michigan Court of Appeals rejected the sufficiency of the evidence claim and again affirmed Petitioner's convictions.  People v. Hendrix, No. 277919, 2010 WL 673294, at *1 (Mich. Ct. App. Feb. 25, 2010).  The Michigan Supreme Court denied leave to appeal.  People v. Hendrix, 487 Mich. 855 (2010) (unpublished table decision).

### C.  Petitioner's Collateral and Habeas Review

Petitioner then filed this petition along with a motion to stay proceedings on the petition so he could return to the state courts and file a motion for relief from judgment. Petitioner asserted that contrary to the evidence presented at trial, similar car thefts continued to occur after Petitioner was in custody.  (Doc. 2).  The Court granted the motion.  (Doc. 4).

---

[3]Two of the three judges who sat on the panel that denied Petitioner's motion to remand sat on the panel that issued this decision.

8

Petitioner then returned to the state court and filed a motion for relief from judgment in the trial court, raising the following claims:

> I. Hendrix was denied his right to the effective assistance of counsel by his counsel's failure to investigate and find evidence of similar acts by unknown perpetrators, failure to present that evidence, failure to object to unfairly prejudicial evidence, and failure to object to prosecutorial misconduct.
>
> II. Hendrix was denied the effective assistance of appellate counsel by his appellate counsel's failure to raise these new claims of ineffective assistance of trial counsel and prosecutorial misconduct.
>
> III. Hendrix was denied due process by the prosecutor's misconduct, which included improper questioning, argument, and shifting of the burden of proof.

The trial court denied the motion for relief from judgment, finding that none of Petitioner's claims had merit.  (Doc. 13-9).  Petitioner filed an application for leave to appeal in the Michigan Court of Appeals.  The Michigan Court of Appeals denied the application "for failure to establish entitlement to relief under Michigan Court Rule 6.508(D)." People v. Hendrix, No. 314334 (Mich. Ct. App. Oct. 8, 2013).  Petitioner applied for leave to appeal in the Michigan Supreme Court; relief was denied under Michigan Court Rule 6.508(D). People v. Hendrix, 495 Mich. 992 (2014) (unpublished table decision).

Petitioner then successfully moved to reopen this case, Docs. 8 and 11, and the parties filed supplemental pleadings.  (Docs 9, 12, and 16).  The amended petition raises seven claim, including the claim that his Fifth Amendment rights were violated by admission of the September 8 statements and that his trial counsel was ineffective for failing to move to suppress them.

The Court ordered oral argument on Petitioner's Fifth Amendment claim.  (Doc.

9

20).  This prompted Respondent to file a supplemental brief in which it conceded--after all this time–that Petitioner's Fifth Amendment rights were violated by admission of the September 8 statements but the error was harmless.  (Doc. 23).  At oral argument, Respondent again conceded that error occurred and said the only question for the Court was whether the error was harmless.  See Doc. 25 at p. 8-11.

### III.  Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is bared under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam), quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) quoting Williams, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas

10

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.86, 101 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103 (internal quotation omitted).

"Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time - i.e., the record before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011).

V.  Analysis

A.  Admission of Petitioner's September 8 Statements

Petitioner's first claim challenges the admissibility at trial of his statements to Hogan on September 8.  Petitioner argues, and Respondent concedes, that clearly established Supreme Court law prohibited Hogan from interrogating Petitioner after he had exercised his right to counsel on September 6.  Petitioner argues that the error was significant because the prosecutor relied heavily upon Petitioner's September 8

11

statements to establish his guilt.  Petitioner's related third claim asserts that his trial counsel was ineffective for failing to move to suppress the statements.  Respondent argues that any error in admitting the statement was harmless.

### 1.  Petitioner's Fifth Amendment Right

#### a.

Respondent correctly concedes error with respect to Petitioner's first claim.  The Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination.  In Miranda v. Arizona, the Supreme Court held that this prohibition against compelled self-incrimination requires a custodial interrogation to be preceded by advice that the accused has the right to an attorney and the right to remain silent.  384 U.S. at 479.  It is settled law that if the accused invokes his right to counsel, "the interrogation must cease until an attorney is present." Id. at 474; Minnick v. Mississippi, 498 U.S. 146, 152-53 (1990).

In Edwards v. Arizona, the Supreme Court "reconfirm[ed]" the rule established in Miranda that when a suspect has invoked the right to have counsel present during custodial interrogation, the suspect may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."  451 U.S. at 484-85.

"The Edwards rule, moreover, is not offense specific: Once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present."  McNeil v. Wisconsin,

12

501 U.S. 171, 177 (1991) (citing Arizona v. Roberson, 486 U.S. 675 (1988)) (emphasis in original).

b.

Petitioner first presented this claim to the state courts in his motion to remand. The motion was supported by the police reports and notice of rights forms that indicate that Petitioner invoked his right to counsel on September 6.  The Michigan Court of Appeals denied the motion "for failure to persuade the Court of the necessity of a remand at this time."  (Doc. 19-6).  Under Circuit law, this decision constitutes an adjudication on the merits of Petitioner's claim in light of the evidence proffered to the court.  See Nali v. Phillips, 681 F.3d 837, 851-853 (6th Cir. 2012) (Michigan Court of Appeals denial of motion to remand "for [petitioner's] failure to persuade the Court of the need to remand" the case at that time constituted adjudicated on the merits of Petitioner's claim).

Because Respondent has conceded that the September 8 statements were admitted in violation of Petitioner's Fifth Amendment rights, the precise grounds for the state court's decision are irrelevant.  Whether the state court found the claim to be without merit, harmless, or even if it failed to adjudicate the claim on the merits at all, the same harmless error test applies.  See Fry v. Pliler, 551 U.S. 112, 121-22 (2007).

c.

On habeas review, a constitutional error is harmless unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946).  The Brecht test is not one of "actual prejudice," which is to say it does

13

not ask a court to look at the evidence, subtract out the erroneously admitted evidence, and then determine whether the properly-admitted evidence suffices to convict. See O'Neal v. McAninch, 513 U.S. 432, 438-39 (1995).

Rather than placing the burden on Petitioner to show harmfulness in this manner, the Supreme Court directs the court to ask, "Do I, the judge, think that the error substantially influenced the jury's decision?" Id., 513 U.S. at 436.  If the court is certain that the error had no or a small effect, the verdict must stand. Id.  However, if the court has "grave doubts" as to whether the error had substantial or injurious effect or influence in determining the jury's verdict, such that the matter is so evenly balanced that he feels himself in a "virtual equipoise" as to harmlessness, the court must treat the error as if it were harmful and grant relief. Id., 513 U.S. at 435, 445.

d.

Here, after a careful review of the trial record, the Court finds that the admission of Petitioner's September 8 statements had a substantial and injurious effect or influence in determining the jury's verdict.  The case against Petitioner rested on three prongs: (1) Petitioner was found in the vehicle six hours after the theft; (2) Petitioner had previously stolen vehicles in the same vicinity under similar circumstances and driven them to the same general location in Detroit and the thefts stopped after this arrest; and (3) confronted with the fact that a person was seriously injured and might die as a result of the theft, Petitioner nevertheless refused to give an innocent explanation for how he came to possess the vehicle.  This third prong was a substantial component of the prosecutor's case, and it depended almost entirely on Petitioner's September 8 statements.

14

Respondent argues that standing alone the first two prongs presented a compelling case against Petitioner, and even without the September 8 statements, the third prong could have been supported with testimony about Petitioner's evasive answers to Sergeant Ferguson during the ride to Shelby Township on September 6. This argument, however, ignores the importance the prosecutor specifically placed on the September 8 statement. Although Ferguson testified that Petitioner was uncooperative when questioned during the ride to Shelby Township, there is no indication in the record that Petitioner was informed at that point that a person was severely injured in connection with the stolen vehicle. Petitioner's knowledge of the victim's dire condition was a necessary predicate for the prosecutor's argument that Petitioner had a strong incentive to give an innocent explanation for how he obtained the vehicle. Indeed, Hogan testified that he informed Petitioner of Doen's condition on September 6 – obviously after Petitioner arrived at Shelby Township and had already been questioned by Ferguson.

The prosecutor placed considerable importance on the September 8 interview in closing argument to argue Petitioner's responses were inconsistent with innocence:

> What's more important now is Detective Hogan's interview with him on September 8 at the Macomb County Jail. Detective Hogan says a woman was badly injured, pushed out of that minivan and she might die, and this is your opportunity to tell what happened. In other words, maybe not verbalize precisely as follows goes like this:
>
> Tell me where you were, give me an alibi, who you were with, and how did you obtain the vehicle? Because if you can give me that information, then I can investigate it, and I can clear you.
>
> *               *               *
>
> [I]f Defendant acquired that car in some way other than being the thief at

15

Vineyards, he would have shared that with Detective Hogan . . . here's a man who's been through the criminal justice system, you know that. He's not some 16-year-old kid, somebody facing his first trouble with the law. He's been around. He knows the drill. And he has heard from Detective Hogan that the woman might die. Now, ask yourselves, would anybody with any intelligence know that he's about to face a very serious charge, carjacking, and felony murder if the woman dies. If you're not the person who took the car at Vineyards, you're going to be clambering (sic), be waiting. Detective, let me tell you what happened.

\*                    \*                    \*

His silence is deafening, his silence speaks a thousand words. His silence in refusing to say from where he made the call, how he obtained the vehicle, and who he was driving with during the important times. That's like a thunderbolt from the sky. In other words, he's saying, I did it. Because if I didn't do it, I'll tell you why.

Doc. 13-5, at 141-44, 165-66.

This is powerful and compelling narrative.  Yet this argument could not have been made if only the September 6 statements had been admitted.  At that point, Petitioner had not yet been informed of the seriousness of the matter – that he was found sitting in a vehicle connected to a homicide.  As to the September 6 evasiveness, Petitioner would have at least been able to respond: "I didn't know how much trouble I was in."  The force of the prosecutor's argument rested on the fact that Petitioner knew he was potentially facing murder charges if he could not give an innocent explanation for how he obtained the vehicle but yet he refused to do so.  This all came from Petitioner's September 8 statements.  Petitioner's silence at that time in light of the information given to him by Hogan was, in the words of the prosecutor, like a "thunderbolt from the sky" that said "I did it."

Without the September 8 statements, the evidence against Petitioner is (1) that he was found in the vehicle hours after the robbery and (2) that he had on previous

16

occasions stolen cars from the same area and driven them to the same location in

Detroit.  Although this is persuasive evidence, there can be no serious debate whether

the case against Petitioner was significantly strengthened by admission of the

September 8 statements.  The prosecutor certainly thought it was paramount, as he

devoted a great deal of his closing argument to it.

O'Neal tells the Court to ask itself directly:  "Do I, the judge, think that the error

substantially influenced the jury's decision?"  513 U.S. at 436.  The answer is yes.  The

admission of the September 8 statements was a key part of the prosecution's case, and

it had a substantial influence on the outcome of the trial.  Accordingly, Petitioner is

entitled to relief with respect to his first claim.

2.  Petitioner's Sixth Amendment Right

a.

Petitioner's third habeas claim asserts that his counsel was ineffective for failing

to move to suppress the September 8 statements.  Again, under Nali, the Court must

assume that when the Michigan Court of Appeals denied the motion to remand, it

denied this claim on the merits.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two-prong test.  First, the defendant

must demonstrate that, considering all of the circumstances, counsel's performance

was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687

(1984). In so doing, the defendant must overcome a "strong presumption" that counsel's

behavior lies within the "wide range of reasonable professional assistance." Id. at 689.

17

Second, the defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination under the Strickland standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" Knowles, 556 U.S. at 123 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). Moreover, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

Despite the double deferential standard, Petitioner's trial counsel provided ineffective assistance of counsel by failing to move to suppress Petitioner's September 8 statements and that it was unreasonable for the Michigan Court of Appeals to find otherwise. First, as to deficient performance, there can be no question that a motion to suppress was meritorious for the reasons discussed above. It appears the prosecutor and police were operating under the mistaken assumption that when a suspect invokes his right to counsel, they may still question him about other crimes. The prosecutor said so in its answer to Petitioner's motion to remand. The prosecutor stated in the same paper that defense counsel had access to the September 6 police report and advice of rights form before trial. See Doc. 13-10, at 60-61 n. 2. Thus counsel had the information necessary to file a meritorious motion to suppress the September 8 statement but failed to do so.

18

b.

There was no legitimate strategic reason for trial counsel to allow admission of Petitioner's statement.  Petitioner did not cooperate with Hogan and would not tell him his whereabouts at the time of the incident, nor would he explain how he obtained the vehicle.  The statement did not benefit Petitioner.  Indeed, as demonstrated above, it provided valuable ammunition for the prosecution.  It is simply not reasonable to conclude that trial counsel made a competent strategic decision to allow admission of the September 8 statements.  Put simply, trial counsel's failure to seek suppression of the September 8 statements constitutes deficient performance.

This leads to the prejudice prong.  Had trial counsel moved for suppression of Petitioner's statements, there is a reasonable probability that the result of the proceeding would have been different.  First, as discussed above, there can be no question that the September 8 statements would have been suppressed had a motion been filed by trial counsel.  Indeed, Respondent concedes the statements were taken in violation of Petitioner's constitutional rights.

Furthermore, and for the reasons discussed above, there is a reasonable probability that the result of the proceeding would have been more favorable to Petitioner had the September 8 statements been suppressed.  These statements were a key piece of evidence for the prosecution, and without it the case against Petitioner would have been significantly weaker.  The importance the September 8 statements played for the prosecutor's case is manifest from a fair reading of the trial record.

Accordingly, the Court finds that Petitioner has demonstrated entitlement to relief with respect to his third claim.

19

B.  Petitioner's Remaining Claims

Petitioner's remaining claims are briefly addressed.  None merit relief.

1.  Prosecutor's Comment on Petitioner's Silence

In his second claim, Petitioner contends that the prosecutor erroneously commented upon Petitioner's failure to provide the police with an alibi during questioning by police.  It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial.  Doyle v. Ohio, 426 U.S. 610, 619 (1976); Griffin v. California, 380 U.S. 609, 615 (1965). "[T]he Doyle rule has no application unless the defendant has remained silent and could be considered to have done so in reliance on the implied assurances of the Miranda warnings." United States v. Crowder, 719 F.2d 166, 172 (6th Cir. 1983) (en banc).

Here, Petitioner did not remain silent.  Rather, he responded to Hogan's questions in an evasive manner. "[A] defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent.  As to the subject matter of his statements, the defendant has not remained silent at all." Anderson v. Charles, 447 U.S. 404, 408 (1980).  Although admission of Petitioner's statements amounted to a violation of his Fifth and Sixth Amendment rights, the prosecutor's argument that Petitioner's evasive answers were tantamount to a confession did not violate Due Process. Therefore, he is not entitled to habeas relief on this ground.

2.  Admission of Prior Bad Act Evidence

In his fourth claim, Petitioner says that his trial was rendered fundamentally unfair by admission of evidence of Petitioner prior car thefts.  Petitioner asserts that the prior

20

offenses were not similar enough to the Doen theft to justify their admission under Michigan Rule of Evidence 404(b).

A violation of state evidence rule 404(b) is not cognizable on habeas review. "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000). "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003); see also Bey v. Bagley, 500 F.3d 514, 519 (6th Cir. 2007). As such, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). Bugh, 329 F.3d at 512-13. Therefore, Petitioner is not entitled habeas relief on this ground.

### 3.  Sufficiency of the Evidence

Petitioner also contends that insufficient evidence was presented at trial to sustain his conviction. Specifically, he says that the evidence offered to identify him as the person who stole the vehicle and pushed Doen from it was insufficient. Important in the analysis of this claim is the fact that Petitioner's September 8 statements are part of the trial record.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the

21

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205 (citing Jackson, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id. The Jackson standard is "exceedingly general," and therefore state courts are afforded "considerable leeway" in its application. Davis v. Lafler, 658 F.3d 525, 535 (6th Cir. 2011).

Here, the Michigan Court of Appeals found that viewed most favorably to the prosecution, the jury could rationally find beyond a reasonable doubt that Petitioner was one who stole the vehicle and pushed Doen out of it. Given the record evidence, which critically includes the September 8 statements, and the considerable leeway state courts are afforded in resolving sufficiency-of-the-evidence questions, the conclusion that sufficient evidence of Petitioner's identification as the perpetrator of the crime was presented at trial was not unreasonable. At a minimum, there could be fairminded disagreement regarding the merits of this claim. Petitioner is therefore not entitled to relief on this ground.

22

#### 4.  Trial Counsel's Failure to Investigate

Petitioner next contends that trial counsel was ineffective for failing to investigate and present evidence that similar car thefts continued to occur in the area even after Petitioner was in custody, contrary to the evidence presented at trial.  Petitioner proffers evidence that eleven such automobile thefts occurred in Shelby Township after Petitioner's arrest, and that five of those bare similarities to Petitioner's thefts, such as the keys being left in the vehicle.  The trial court denied this claim on the merits in its order denying Petitioner's motion for relief from judgment.  The trial court noted that Petitioner had not shown that the other thefts were sufficiently similar to the ones Petitioner was responsible for committing nor had Petitioner proffered evidence that the vehicles in question were abandoned or driven to the same area of Detroit where Petitioner drove the vehicles he stole.  This conclusion is not objectively unreasonable. As such, habeas relief is not warranted.

#### 5.  Prosecutorial Misconduct

Petitioner asserts that the prosecutor committed misconduct when he elicited evidence that Petitioner remained incarcerated from the time of his arrest when the prosecutor questioned an officer whether any similar car thefts occurred after Petitioner was in custody.  He also argues it was improper for the prosecutor to question Hogan to offer his opinion on whether the other acts evidence indicated Petitioner's guilt, and asked for his opinion on the relevance of Petitioner's failure to provide an alibi. Petitioner further asserts that the prosecutor used burden-shifting arguments in closing, such as informing the jury that Petitioner would not have been charged if he had

23

provided an alibi, and that Petitioner had failed to present any alibi witnesses at trial.[4]

A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

A fairminded jurist could find that even if any of the statements were improper they did not rise to the level of a due process. Furthermore, the jury was instructed that the lawyers' statements and arguments were not evidence. The instruction by the trial court could convince a fairminded jurist that any prejudice that may have arisen from any improper comments was thereby cured. The state court's similar conclusion is not unreasonable. Accordingly, Petitioner is not entitled to relief on this claim.

### IV. Conclusion

For the reasons state above, a writ of habeas corpus is CONDITIONALLY GRANTED with respect to Petitioner's first and third claims. Unless the State takes action within ninety (90) days of the date of this Memorandum and Order to afford Petitioner a new trial, the State of Michigan must release Petitioner from custody unconditionally.

_____

[4]Petitioner also says that trial counsel was ineffective by failing to object to the alleged prosecutorial misconduct. Because the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to the remarks. See Slagle v. Bagley, 457 F. 3d 501, 528 (6th Cir. 2006).

24

A writ of habeas corpus is DENIED with respect to Petitioner's remaining claims.[5]

SO ORDERED.


CODA

The Court knows that habeas relief is foreclosed in all but the most exceptional cases.  This case presents one of those rare instances.  An undisputed constitutional error occurred at trial.  The state appellate courts disregarded the error despite being presented with evidence of a violation.  The error had a substantial impact on the outcome of the case.  Habeas relief is warranted.

This decision brings little comfort to those affected.  Petitioner's constitutional rights were ignored and violated.  It is likely he will stand trial again and there is a fair chance he will be convicted again.  The closure for the family members of the victim is gone.  They will likely have to go through the anguish of another prosecution.  Public trust in our criminal justice system has been degraded because the Michigan Court of Appeals disregarded constitutional error.  In the end, it is enough to say that constitutional principles have been preserved.


                                        S/Avern Cohn
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE

Dated: September 1, 2016
        Detroit, Michigan

---

[5]Should Respondent appeal this decision, Petitioner is not required to obtain a certificate of appealability on his denied claims.  See Lancaster v. Adams, 324 F.3d 423, 436 n. 3 (6th Cir. 2003).